### 67554. WHIDDON v. O'NEAL et al.
### 67555. WHIDDON et al. v. O'NEAL et al.

POPE, Judge.

For some time prior to February 22, 1982, an adult crossing guard had been provided by the Tifton Police Department to patrol a crosswalk located on 20th Street in Tifton, Georgia. This crosswalk connected the campus of Northside Elementary School with Prince Avenue by crossing 20th Street, a four-lane roadway. The guard was provided on school days from 8:00-8:45 a.m. and 3:15-3:45 p.m. When the regular guard suffered a heart attack with sick leave beginning February 22, 1982, the crosswalk was then patrolled by various members of the city police with personnel being assigned when available.

At approximately 3:30 p.m. on April 6, 1982, six-year-old Dionne Whiddon, a student at Northside Elementary School, was struck by an automobile driven by Freda O'Neal. At that time, no crossing guard was present at the 20th Street crosswalk. The collision occurred as the child, leaving the campus, was a pedestrian in the unattended crosswalk. Suit to recover for personal injuries was filed on behalf of the child by her father against the driver of the car as well as the City of Tifton ("City"). In a separate suit, both parents filed an action

against O'Neal and the City seeking to recover for the medical expenses of the child and for wages lost by the mother when she left her job to care for her injured child. Defendant-appellee City was granted summary judgment and plaintiffs-appellants appeal.[1]

Appellants' suits against the City were based upon theories of the City's negligence in failing to replace the regular school crossing guard with a substitute and in failing to inform the general public of the absence of such guard, such negligence also constituting a nuisance. "A county is not required by any statute of this state to provide school crossing guards. Rather, its duty as a local law enforcement agency under [OCGA § 20-2-1130] is to 'identify school safety crossings and motor vehicle traffic patterns on and around school grounds . . .' and to '. . . advise the school board and the school superintendent relative to compliance by the school system with State laws, policies and regulations of the State agencies requiring safety standards and practices.'" *Russell v. Fletcher*, 244 Ga. 854 (262 SE2d 138) (1979). "Where municipal corporations are not required by statute to perform an act, they may not be held liable for exercising their discretion in failing to perform the act." OCGA § 36-33-2. See *Tamas v. Columbus, Ga.*, 244 Ga. 200 (259 SE2d 457) (1979). Thus, it is clear that had the City initially elected *not* to provide a school crossing guard, the absence of a guard at the time the collision occurred would provide no basis for the City's liability for the child's injuries. See *McLaughlin v. City of Roswell*, 161 Ga. App. 759 (289 SE2d 18) (1982).

In our case law, however, "a clear line is drawn between a discretionary nonfeasance and the negligent maintenance of something [undertaken] by the city, in its discretion, in such manner as to create a dangerous nuisance, and which amounts to misfeasance." *Bowen v. Little*, 139 Ga. App. 176, 177 (228 SE2d 159) (1976), and cases cited therein. A precise legal definition of nuisance applicable to all situations is, indeed, difficult to formulate. However, toward this end our Supreme Court has provided the following guidelines governing municipal liability for the maintenance of a nuisance:

"(1) The defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. (A single isolated act of negligence is not sufficient to show such a negligent trespass as would constitute a nuisance, *City of Atlanta v. Roberts*, [133 Ga. App. 585 (211 SE2d 615) (1974)].)

---

[1] The grant of summary judgment to the City leaves the action pending in the trial court against Mrs. O'Neal, the driver. However, because the order granting summary judgment recites "that there is no just reason for delay" as well as expressly directing entry of final judgment, the instant appeal is properly before this court. See OCGA § 9-11-54 (b). Cf. *MARTA v. Gould Investors Trust*, 169 Ga. App. 303 (2) (312 SE2d 629) (1983).

"(2) The act must be of some duration (two weeks in [*Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834 (165 SE2d 141) (1968)], four hours held insufficient in *Roberts*, supra) and the maintenance of the act or defect must be continuous or regularly repetitious ([*Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419 (249 SE2d 224) (1978)] and *Roberts*, supra).

"(3) Failure of the municipality to act within a reasonable time after knowledge of the defect or dangerous condition. (*Ft. Oglethorpe*, supra.)." *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (256 SE2d 782) (1979). "Under some factual situations, it can be held as a matter of law that no nuisance exists; however, that question ordinarily is a question of fact for the jury." *Mayor &c. of Savannah v. AMF, Inc.*, 164 Ga. App. 122, 123 (295 SE2d 572) (1982). Accord *Kicklighter v. Savannah Transit Auth.*, 167 Ga. App. 528 (3) (307 SE2d 47) (1983).

The record shows that the school crossing guard gave notice of her absence due to a heart attack by applying for sick leave on February 22, 1982. Appellants allege that the City had actual notice of the guard's illness two weeks prior to the collision and "failed and omitted to either replace the ill school crossing guard with a substitute police officer or to notify members of the general public that because of the illness of the school crossing guard, there would be no school crossing guard to protect infant children crossing 20th Street on the afternoon of April 6, 1982." The City contends that the record contains evidence, provided in its answers to appellants' interrogatories, sufficient to pierce these allegations and to show that the unattended crosswalk on the afternoon of April 6, 1982 was an isolated incident. We disagree. The City admitted that a guard was first provided at the subject crosswalk during the 1956-57 school year when the school opened. Under ordinary circumstances, the guard is stationed at the crosswalk on Monday-Friday from 8:00-8:45 a.m. and 3:15-3:45 p.m. Although female police officers are not regularly assigned by the police department as crossing guards, the City stated that the Tifton Police Department does ordinarily provide an adult crossing guard on regular school days at the 20th Street crosswalk. Due to a heart attack, the regular guard did not work during the month of March 1982 and only worked the 29th and 30th days of April. "During the period of time [the regular guard] was incapacitated Tifton Police Officers were assigned on a daily basis to monitor the crossing at 20th Street adjacent to Northside Elementary School *as permitted by the availability of personnel and workload for the Police Department on any given day.*" (Emphasis supplied.) The City presented plausible evidence to show that the officer who was assigned to guard the crosswalk at the time of the collision had been called away to an emergency situation elsewhere in the City. However, we find the City's explanation of its actual implementation of the procedure to provide

a guard at the crosswalk described above to be inconclusive and insufficient to show that the unattended crosswalk on April 6, 1982 was a single isolated act of negligence or to show that the unguarded crosswalk was not continuous or repetitious.

" 'On a motion for summary judgment the burden of establishing the non-existence of any genuine issue of fact is upon the moving party and all doubts are to be resolved against the movant. The movant has that burden even as to issues upon which the opposing party would have the trial burden, and the moving party's papers are carefully scrutinized, while the opposing party's papers, if any, are treated with considerable indulgence.' *Ham v. Ham*, 230 Ga. 43, 45 (195 SE2d 429) (1973)." *Gilbert v. Decker*, 165 Ga. App. 11, 12 (299 SE2d 65) (1983). Since the City failed to conclusively refute appellants' allegation of a nuisance, the dangerous condition created by the City's failure to provide a substitute crossing guard or to inform the public of the lack of such guard, a material issue remains in these cases; therefore, the City's motion for summary judgment should have been denied. On summary judgment the court is concerned only with whether there is a genuine issue of fact for determination and not with the difficulty the appellants may have in proving their cases at trial. *Rigby v. Powell*, 233 Ga. 158 (7) (210 SE2d 696) (1974); *Mustin v. C. & S. Nat. Bank*, 168 Ga. App. 549 (1) (309 SE2d 822) (1983).

*Judgment reversed. Banke, P. J., and Benham, J., concur.*

DECIDED JULY 3, 1984 —
REHEARING DENIED JULY 16, 1984 —

*Roy Benton Allen, Jr.*, for appellants.
*William C. Sanders, G. Stuart Watson*, for appellees.