76075, 76076. CITY OF FAIRBURN v. COOK; and vice versa.
76077. COOK v. MORELAND et al.
76211. ATLANTA & WEST POINT RAILROAD COMPANY v. COOK et al.
76212. COOK v. ATLANTA & WEST POINT RAILROAD COMPANY et al.

(372 SE2d 245)

SOGNIER, Judge.

James Cook brought suit against the City of Fairburn (the "City"), Atlanta and West Point Railroad Company (the "Railroad"), and numerous other defendants seeking damages stemming from a vehicular accident that left him a quadriplegic. The trial court granted summary judgment in favor of Thomas Moreland and Archie Burnham, two of the individual defendants, and with the exception of the City and the Railroad, the remaining parties were either voluntarily dismissed from the suit or granted summary judgment, and are no longer involved in this case. Upon trial of the suit, the jury returned a verdict in favor of Cook for $2.5 million, the sum to be shared equally between the City and the Railroad. The five appeals and cross-appeals from this case are consolidated herein.

Appellee and his co-worker, Keith Smith, were heading home in Smith's truck along State Route 92 (also known as Campbellton Road), having completed delivery of a lawn mower, when Smith drove the truck under a bridge owned by the Railroad into the intersection of State Route 92 and East Broad Street in the City. A "signal ahead" sign was situated before the bridge; a center traffic light suspended over the intersection by wire and corner signal lights mounted on posts controlled the flow of traffic through the intersection. Smith testified he did not see the "signal ahead" sign and did·not see any of the traffic lights at the intersection itself. It is uncontroverted that the truck driven by Smith entered the intersection against the controlling red light, whereupon the truck was hit and appellee received the injury that left him a quadriplegic. The accident occurred on June 19, 1978; appellee was hospitalized until September 15, 1978.

*76211, 76212. Atlanta & West Point Railroad Company v. Cook;*
*and vice versa.*

The Railroad contends the trial court erred by denying its motion for judgment notwithstanding the verdict, in that there was no issue for jury determination in regard to the two bases of recovery asserted by appellee against it, negligence and nuisance. We agree and reverse.

1. Appellee's negligence theory of recovery was premised on a breach of the Railroad's duty of ordinary care owed appellee as a member of the public by the Railroad's creation and maintenance of a dangerous condition, i.e., the Railroad's bridge. Appellee asserted that the location, design and configuration of the Railroad's bridge obstructed the driving public's view of the traffic signals, thereby creating a dangerous condition.

The evidence adduced at trial showed that the Railroad constructed the bridge in 1917, replacing a grade crossing on Campbellton Road which led into the pre-existing intersection. The height and width of the underpass was sufficient to allow the unimpeded flow of traffic. The traffic signals controlling the flow of traffic into the intersection were first introduced in the 1950's. The evidence was uncontroverted that the Railroad had nothing whatsoever to do with the installation or positioning of the traffic signals.

The Railroad correctly points out that the installation and maintenance of traffic control devices is a statutorily regulated matter, see OCGA § 32-6-50, long acknowledged as a governmental function, see *Englander v. City of East Point*, 135 Ga. App. 487 (218 SE2d 161) (1975), and that the Railroad is statutorily prohibited from installing traffic control devices on its own. See OCGA §§ 40-6-25 (a); 32-6-51 (a). Nothing in OCGA § 32-6-197, cited by appellee, places any duty on a railroad regarding the installation or maintenance of traffic control devices in the area around a railroad underpass. That statute merely references a railroad's duty to maintain the underpass itself, and exempts the railroad from maintaining even the "lighting, drainage, and pavement of the public roads thereunder. . . ." OCGA § 32-6-197 (c).

The pleadings and evidence at trial established that no dangerous condition was created or maintained by the mere existence of the bridge itself. Rather, the dangerous condition asserted by appellee was created by the installation and maintenance of traffic signals in positions where view of the lights was obscured by the bridge's pre-existing structure. Since the duty to install and maintain traffic control devices is placed exclusively in the government, we cannot agree with appellee's argument that the Railroad can nevertheless be held liable for obscuring a public road, i.e., the traffic signals, when the Railroad was statutorily prohibited from exercising any control over

those signals in order to rectify the dangerous condition and when evidence establishes that the structure of the bridge itself created no danger to appellee. The cases appellee cites for the proposition that a private property owner can be held liable for obscuring a public road are thus factually inapposite from the case sub judice in that the items obscuring the plaintiffs' view of the public road were improperly positioned. *Reliable Transfer Co. v. May,* 70 Ga. App. 613 (29 SE2d 187) (1944) (truck illegally parked obscured the view of intersection); *McKinney & Co. v. Lawson,* 180 Ga. App. 550 (349 SE2d 763) (1986) (overgrown tree obstructed public pathway); *Pollard v. Cartwright,* 60 Ga. App. 630 (4 SE2d 693) (1939) and *Callaway v. Pickard,* 68 Ga. App. 637, 642-643 (2) (23 SE2d 564) (1942) (obscured view of on-coming trains stated as explanation of why plaintiffs could not see the train, and as descriptive of the locality and environment of the crossing, rather than as allegations of negligence).

The standards for granting a motion for judgment n.o.v. are the same as those governing the direction of a verdict. The motion may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. *Johnston v. Bill Fancher & Assoc.,* 179 Ga. App. 67, 68 (345 SE2d 144) (1986). Because the Railroad breached no duty owed appellee in that it neither created nor maintained the dangerous condition that gave rise to appellee's injury, a verdict for the Railroad on the issue of negligence was demanded and the trial court erred by denying the Railroad's motion for judgment n.o.v. Id. at 69.

2. Appellee's remaining claim against the Railroad was based on the premise that the 1917 bridge was constructed in the public right-of-way and thus, as an unauthorized structure under OCGA §§ 32-6-1 and 32-6-51 (b), the bridge was a public nuisance. See *Smith v. Hiawassee Hardware Co.,* 167 Ga. App. 70 (305 SE2d 805) (1983). Resolution of this issue, therefore, turns on the extent of the public right-of-way acquired by the public from the Railroad.

Appellee asserts that the public right-of-way over the grade level crossing of the Railroad's train tracks on Campbellton Road (State Route 92) extended to the heavens prior to the Railroad's construction of its bridge in 1917, and thus the bridge, as erected and maintained, occupies physical space "used" by the public so as to place it in the public right-of-way. The evidence reflects that the Campbellton Road crossing existed at least since the 1870's (as indicated by deeds with the Railroad as grantor referencing the road in property descriptions) and it is essentially uncontroverted that due to public usage of the crossing, a public right-of-way had arisen either by dedication or by prescription by that time.

However, regardless whether the right-of-way was acquired by dedication or by prescription, we cannot agree with appellee that the

right-of-way included the air space now occupied by the Railroad's bridge. As to dedication, the evidence established that there was no express dedication to public use and "[i]n cases of implied dedication, there is no dedication implied beyond the use. [Cits.] When dedication results from mere use and acquiescence, it is not to be inferred that the donor parted with more than the use necessitates. [Cit.]" *R. G. Foster & Co. v. Fountain,* 216 Ga. 113, 119 (114 SE2d 863) (1960). Likewise, as to prescriptive easements, " '[t]he true rule as to prescription is, that the right is measured by actual user, and not by capacity for more extended use. [Cits.]. . .' " *Goble v. Louisville &c. R. Co.,* 187 Ga. 243, 253 (200 SE 259) (1938). See *Kerlin v. Southern Bell Tel. &c. Co.,* 191 Ga. 663, 666-670 (13 SE2d 790) (1941) and *Humphries v. Ga. Power Co.,* 224 Ga. 128, 129-130 (3) (160 SE2d 351) (1968) (addition of more telephone lines or power equipment allowed where it appeared the addition would not occupy general area beyond the outer limits of space previously occupied or territorially beyond easement already acquired). We are not persuaded by appellee's argument that the physical space now occupied by the bridge was necessary to the public's "use" of the right-of-way. Although the space "used" by the public included that space necessary to allow safe passage over or under the tracks, the evidence is uncontroverted that the space provided by the bridge for the public right-of-way adequately allows for the safe and unimpeded flow of traffic thereunder. As pointed out above, the traffic lights, insofar as their installation in juxtaposition with the bridge is concerned, are not part of the bridge's structure nor in any degree the responsibility of the Railroad.

Therefore, we hold that the Railroad's bridge did not infringe on the public right-of-way and as a matter of law, a verdict was demanded in favor of the Railroad on appellee's claim of public nuisance. See generally *Johnston,* supra.

3. Appellee's cross-appeal was made contingent upon a determination by this court that a retrial of the lawsuit was required insofar as the Railroad was concerned. Since our reversal of the judgment in Case No. 76211 eliminates the need for a retrial, it is thus not necessary to address appellee's four enumerations asserting error in the giving of two jury instructions and the admission of a 1970 license agreement between the Railroad and the City as well as evidence regarding appellee's non-use of seat belts. (But, as to the latter enumeration, see Division 10, infra.) This appeal is accordingly dismissed.

*76075, 76076. City of Fairburn v. Cook; and vice-versa.*

4. "[R]emaining joint tortfeasors are not entitled to a new trial where one of them is adjudged not liable on the merits by a motion for judgment notwithstanding the verdict." *Ammons v. Horton,* 128

Ga. App. 273, 276 (196 SE2d 318) (1973). Thus, unless the City establishes in its enumerations of error that it is entitled on other grounds to a new trial, a new trial will not be granted simply because the denial of its co-defendant's motion for judgment n.o.v. was reversed by this court. See *Hubacher v. Volkswagen Central*, 164 Ga. App. 791, 793-794 (2) (298 SE2d 533) (1982). However, since this matter immediately calls into issue the jury verdict, we will address first the last enumeration of the City, in which error was asserted as a result of the trial court's entry of judgment on an illegally apportioned verdict.

At the close of trial, the jury returned a verdict that provided as follows: "We, the jury, find for the Plaintiff, James T. Cook, against Defendants, Atlanta and West [sic] Railroad Company and the City of Fairburn, two million five hundred thousand [dollars] in compensatory damages to share equally." It appears that the words "to share equally" were added by the jury to the verdict form prepared by the trial court. The trial court subsequently determined that the added language was a formal defect rather than a substantive error and entered judgment against the City and the Railroad for the full amount of the verdict.

The City asserts in its brief that by adding to the verdict form the words "to share equally," the jury plainly manifested an intent to apportion one-half of the damages against the City and the other one-half against the Railroad. We agree with the City that this was the plain intent of the jury, but we do not agree with the City that the verdict so returned was rendered illegal by the apportionment. In *Gilson v. Mitchell*, 131 Ga. App. 321 (205 SE2d 421) (1974), in which an exhaustive discussion of the law regarding joint tortfeasors was undertaken, the court noted that "nuisance cases proceed under a different rule, which is that joint participants in the creation of a nuisance are *not* jointly and severally liable for the full total of plaintiff's damages, but only for their individual parts." Id. at 328. On appeal, the Supreme Court affirmed and expressly adopted the opinion of the Court of Appeals. *Mitchell v. Gilson*, 233 Ga. 453, 454 (211 SE2d 744) (1975). Appellee's suit against the City proceeded on the basis of nuisance. See Division 6, infra. Therefore, since "nuisance defendants are not joint tortfeasors in terms of several liability," *Gilson*, supra at 329, the verdict returned by the jury in the case sub judice legally apportioned the City $1,250,000.00 as its part of the compensatory damages due appellee. "Where a verdict is plain and unmistakable in its legal effect, it must speak for itself . . . . [Cit.]" *Jolly v. Jolly*, 137 Ga. App. 625, 626 (224 SE2d 807) (1976). Accordingly, the trial court erred by amending the verdict as returned. See OCGA § 9-12-4.

5. In its first enumeration, the City contends the trial court erred by denying its motions for directed verdict or judgment notwithstanding the verdict on the ground that appellee failed to give the City

notice of his claim within six months of the date the claim arose as required by OCGA § 36-33-5. The City received notice of appellee's claim for the June 19, 1978 accident on February 26, 1979.

"The requirement of ante litem notice in [OCGA § 36-33-5] stat-' ing that before suit may be instituted against any municipal corporation for money damages for injury to person or property, it must be notified in writing within 6 months of the event upon which the claim is predicated for opportunity to adjust same is a statute of limitation. [Cits.] And where the person to whom the claim belongs is a person under disability as set forth in [OCGA §§ 9-3-90 and 9-3-98], the limitation period does not begin to run until such time as the disability shall have been removed. [Cits.]" *City of Barnesville v. Powell*, 124 Ga. App. 132-133 (1) (183 SE2d 55) (1971).

Appellee asserted that his mental incapacity following the accident excused his failure to notify the City within six months of the accident. " 'The test for mental incapacity is not whether one did not manage his own affairs, acquiescing in the management thereof by others, or whether one has merely managed his affairs unsuccessfully or badly. That one was not "bright" or not clear about some matters occurring during the period is not evidence of mental incompetency. (Cit.) The test is one of capacity — whether the individual, being of unsound mind, could not manage the ordinary affairs of his life. (Cit.)' [Cits.]" *Whisnant v. Coots*, 176 Ga. App. 724, 725 (337 SE2d 766) (1985).

We disagree with the City that evidence indicating appellee was able to understand English and to respond to questions put to him within three weeks of his accident demanded a verdict in its favor that appellee was not so incapacitated that he could not have managed the ordinary affairs of his life. Our review of the transcript reveals ample evidence from which the jury could have concluded that, as a result of the trauma of an accident in which appellee was changed in a matter of seconds from a normal healthy 18-year-old into a permanent quadriplegic, appellee suffered such a deep state of depression that he was mentally incapable of managing his affairs for a period extending at least to the date he was released from the hospital. " 'On appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. [Cit.]' [Cit.] 'The standard of appellate review of the trial court's denial of a motion for a directed verdict is the "any evidence" standard. [Cit.] . . . The standard for granting or denying a judgment notwithstanding the verdict is the same as that for a directed verdict. [Cit.]' [Cit.]" *American Game &c. Svc. v. Knighton*, 178 Ga. App. 745 (1) (344 SE2d 717) (1986). We find no error in this enumeration in the trial court's denial of the City's motions for directed verdict and for judgment n.o.v.

6. The City contends the trial court erred by failing to grant its motions for a directed verdict or judgment n.o.v. because the Supreme Court's decision in *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419 (249 SE2d 224) (1978) controls the question of the City's liability for creating and maintaining a nuisance adversely to appellee. In *Palmerio*, a collision occurred in the middle, or reversible, lane of a three lane viaduct in Savannah. The plaintiffs brought suit alleging that the failure to post proper signals to warn motorists of the reversible lane usage resulted in such a hazardous condition that it amounted to the maintenance of a nuisance. The Supreme Court affirmed the trial court's directed verdict in favor of the city because rather than alleging that the city "had committed an act which created the dangerous condition," the plaintiffs alleged the city had *failed* to act to install the traffic signal, and that because numerous statutes placed exclusive authority and jurisdiction over the road at the time of the accident in the State Highway Board, the city did not fail "to perform an act that it was under a duty to perform." Id. at 427. (The Supreme Court noted that even at the time of the *Palmerio* decision, those statutes had been repealed or amended. See id. at 422-423 and accompanying footnotes.) The case at bar is thus distinguishable from *Palmerio* in that here it is alleged the City "committed an act which created [a] dangerous condition" when it installed the traffic signals in a manner as to be obscured by the pre-existing railroad bridge.

While the evidence is uncontroverted the City performed the actual installation, the City argues the State Department of Transportation, not it, was the entity responsible for the installation of the signals and that the City is thus legally insulated from liability because its installation of the traffic control devices was totally regulated by the DOT. We do not agree with the City that OCGA § 32-2-2 (a) (1) places exclusive responsibility for all aspects of the state highway system in the DOT. OCGA § 32-2-2 (a) (1) does list "erection and maintenance of official department signs" among the items for which the DOT is required to provide "substantial maintenance activities and operations" insofar as those portions of the state highway system lying within the corporate limits of any municipality are concerned. However, when the DOT fails to maintain those portions of the state highway system lying within a municipality's corporate limits as required by law, a municipality can be held liable for such failure under OCGA § 32-4-93 (b) where the municipality agreed to perform the necessary maintenance. Our review of the trial transcript does not support the City's argument that no evidence was adduced from which a jury could find that the City had assumed some responsibility for the installation and maintenance of the traffic signals: One witness testified that the corner signal, placed over 9 feet off the ground,

would have been more visible and thus safer had it been installed at the minimum height of 8 feet; testimony was adduced that the City decided to position the corner signal on the sidewalk side of its pole, rather than leave it positioned on the street side of the pole where its visibility would have been enhanced, to minimize problems caused by tractor trailer trucks turning at the corner. Thus, the evidence reflects that, rather than being regulated by the DOT to the minutest detail, the City had discretion which it exercised in the installation of the traffic control devices.

" ' "A municipal corporation, like any other individual or private corporation, may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or municipal function." ' [Cit.] 'While it is true that a municipal corporation is not liable for its acts of negligence in discharging a governmental function, yet a municipal corporation cannot, under the guise of performing a governmental function create a nuisance dangerous to life or health.' [Cit.]" *Rea v. Bunce*, 179 Ga. App. 628, 630 (1b) (347 SE2d 676) (1986). Since there was evidence authorizing a conclusion that the City was responsible for creating and maintaining a nuisance, we find no merit in the City's contention that it was entitled to judgment as a matter of law under *Palmerio*, supra, and the trial court did not err by denying the City's motions made on this basis.

7. The City contends the trial court erred by failing to grant its motions for a directed verdict or judgment n.o.v. on the ground that there was no evidence the City had notice of the existence of a dangerous condition at the intersection. Viewing the evidence in the light most favorable to appellee, the party who secured the jury verdict, *Bryant v. Colvin*, 160 Ga. App. 442, 444 (287 SE2d 238) (1981), one witness testified about the minutes to a city council meeting he had attended at which a motion was made that a traffic signal at the corner of the intersection "should be installed so as to be in view from under the underpass." Other testimony was presented from the city administrator whose job it was to manage the daily affairs of the City, the superintendent of utilities for the City who was head of the department responsible for the installation and maintenance of the traffic signals, and deposition testimony from the City's chief of police at the time of appellee's accident that they had long been aware of the visibility problems at the intersection in question, having personally observed that a driver approaching the intersection could not always see the traffic lights placed there, and that the lights were sometimes completely or partially blocked from view. The witnesses acknowledged the danger of an intersection where directional signals could not be seen and evidence regarding the abnormally high accident rate for a signalled intersection used primarily by local drivers was

presented.

In order for a city to be held liable for maintenance of a nuisance, "the municipality must have knowledge or be chargeable with notice of the dangerous condition." *Palmerio*, supra at 426 (i). Given this evidence, we cannot say as a matter of law that the City did not have knowledge or that a jury could not find the City was chargeable with notice of a dangerous condition at the intersection. "Applying the standards enunciated above to the record of this case, we find no error in the trial court's denial of [the City's] motions for directed verdict and judgment notwithstanding the verdict." *Nichols v. Purvis*, 178 Ga. App. 826, 827 (1) (344 SE2d 692) (1986).

8. We find no error in the trial court's giving appellee's requests to charge nos. 18 and 24. The City contends the trial court incorrectly stated the applicable legal standards in the two charges by which the City could incur liability for creating or maintaining a nuisance. As to charge no. 24, however, the record reveals the only objection made to this charge was that it was not a complete statement of the law. Thus, "the grounds presently enumerated as error were not raised during trial and therefore may not now be raised for the first time. [Cit.]" *Turner v. Taylor*, 179 Ga. App. 574, 576 (4) (346 SE2d 920) (1986). See also *Walker v. Mitchell*, 174 Ga. App. 738, 739 (331 SE2d 82) (1985). Similarly, we note that the City's arguments asserting error in the trial court's refusal to charge numerous of its requests to charge, which the City alleges fully and completely set forth the law, were not raised in any enumeration of error before this court. " '[T]his court has no jurisdiction to consider grounds argued in the brief which are not enumerated as error. [Cit.]' [Cits.]" *Ga. Dept. of Labor v. Sims*, 164 Ga. App. 856, 857 (2) (298 SE2d 562) (1982). See also *Chevrolet-Pontiac-Canada Group v. Pearson*, 182 Ga. App. 796, 797 (357 SE2d 152) (1987).

The record reveals that as to charge no. 18, which provided that "anyone who creates a dangerous situation on or along a public highway, which it reasonably appears may injure users of the highway in exercise of ordinary care of their own safety, has the duty to eliminate the danger or give warnings to others of its presence," objection was made that "[t]he charge implies that the standard, as it relates to the City, would be that of the exercise of ordinary care rather than nuisance." Even assuming this objection amounted to the argument now made by the City that the charge impermissibly implied that a municipality could be held liable for creating a nuisance under a standard of ordinary care or mere negligence, rather than the proper standard of misfeasance in excess of mere negligence, we find no merit in the City's argument. The reference in the charge to "ordinary care" was directed towards the "users of the highway" rather than the City and we do not believe jurors of ordinary intelligence would be misled

by the charge in applying a standard of ordinary care to the City as the result of this charge. See generally *Gen. Warranty Corp. &c. v. Cameron-Hogan, Inc.,* 182 Ga. App. 434, 438 (7) (356 SE2d 83) (1987). This conclusion is further reinforced by our review of the long and detailed charge as a whole. See generally *Robert & Co. Assoc. v. Tigner,* 180 Ga. App. 836, 841 (351 SE2d 82) (1986).

9. The City contends reversible error resulted when the trial court charged the jury the following: "I charge you further that the six month period for presenting a claim to a municipality does not run during any period of time in which the plaintiff is mentally incapacitated. A person is mentally incapacitated when, being of sound (sic) mind, he cannot manage the ordinary affairs of his life. Physical incapacity is not sufficient. In this case, the plaintiff has the burden of proving that he was mentally incapacitated for a sufficient length of time after June 19th, 1978 to bring his notice of claim to the City of Fairburn within the six month limitation period. If you find that the plaintiff was not mentally incapacitated after June 19th, 1978 or that he was not mentally incapacitated for a sufficient length of time, then it would be your duty to find in favor of the City of Fairburn and render a verdict in its favor."

We agree with the trial court that in view of the context of the charge, with its repeated stress on "mentally incapacitated," the trial court's use of "sound" instead of "unsound" mind constituted a palpable slip of the tongue which could not have misled the jury and thus does not require reversal. See generally *Sanders v. Hughes,* 183 Ga. App. 601, 603 (2) (359 SE2d 396) (1987).

10. The City contends the trial court erred by refusing to admit the deposition testimony of Dr. Herndon Murray, appellee's treating physician, who stated that it would have been very unlikely for appellee to have sustained his injury had he been wearing a seat belt at the time of the accident. The trial court had earlier ruled admissible evidence regarding appellee's non-use of the lap-style seat belt in the truck when it denied appellee's motion in limine to exclude such evidence. (But in this regard we note the recent passage of Ga. L. 1988, p. 31 et seq.) The trial court's ruling was thus not based on any general principle excluding all evidence regarding seat belt usage but on the evidentiary ground that no foundation had been laid to indicate Dr. Murray had any expertise in the consequences of non-usage of seat belts. The City argues, however, that Dr. Murray's statement was admissible because appellee failed to make a foundation or competency objection to the statement at the time of the deposition.

We agree with the trial court that appellee's counsel's failure to object to the doctor's testimony during deposition does not preclude the trial court from exercising its discretion sua sponte to exclude the doctor's testimony on foundation or competency grounds. "The ques-

tion of whether a witness is qualified to give his opinion as an expert is one for the court. [Cit.] His determination will not be disturbed except that it be manifestly abused." *Dept. of Transp. v. Great Southern Enterprises*, 137 Ga. App. 710, 712 (1) (225 SE2d 80) (1976). See also *Rouse v. Fussell*, 106 Ga. App. 259, 262 (126 SE2d 830) (1962). Although the City cites *Andean Motor Co. v. Mulkey*, 251 Ga. 32 (1) (302 SE2d 550) (1983), as controlling authority, we find that case distinguishable on two grounds. First, the Supreme Court in *Andean Motor Co.* affirmed a ruling *admitting* deposition testimony of an expert witness over objection that there was no showing that the witness was qualified as an expert. The Supreme Court was thereby reversing the holding in *Mulkey v. Gen. Motors Corp.*, 164 Ga. App. 752, 753-754 (2) (299 SE2d 48) (1982) that the trial court *abused* its discretion by admitting such evidence. Secondly, the basis for the Supreme Court's holding was OCGA § 9-11-32 (d) (3) (A), which provides that "[o]bjections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time." The Supreme Court stated that "[e]xtended discussion or citation of authorities is not required to demonstrate that if Mulkey had objected during the deposition to the absence of proof of the witness' competence to testify as an expert, defense counsel might have been able to cure this ground of objection by proof of the witness' qualifications. Mulkey thus waived his right to raise this objection." *Andean Motor Co.*, supra at 32. See also *DuBois v. Ray*, 177 Ga. App. 349 (1) (339 SE2d 605) (1985) (admission of videotaped deposition upheld over objection that no court order had been obtained to authorize deposition). Although the City argues it could have "cured" the ground for the inadmissibility of Dr. Murray's testimony if objection had been raised at the time of the deposition, this argument is belied by the transcript in which Dr. Murray's credentials were set forth in detail which, while showing him to be an orthopedic surgeon with impeccable medical credentials, presented no indication that Dr. Murray possessed any expertise whatsoever in the area of seat belt usage. This case is thus unlike *Andean Motor Co.* in which the only evidence regarding the witness' expertise on the issue of whether a 3/4-ton truck was defective, was that he was the president of a business providing engineering services in the field of accident reconstruction, fire and explosion studies, personal injury and products liability claims. Accordingly, we find no error in the trial court's refusal to admit this deposition testimony.

The alternative error asserted by the City in this enumeration is that the trial court erred by failing to charge the jury that they could consider evidence of appellee's failure to use a seat belt on the issue

of damages. Although there are over 8,000 pages of record and transcript involved in this appeal alone, the City did not cite this court to where it made a request to charge on this issue or to what evidence established the causal connection between appellee's injury and his non-usage of the lap-style seat belt, other than the deposition testimony we have held properly excluded and appellee's admission that he was not wearing a seat belt. Even assuming the City's request to charge was otherwise correct, our review of the trial transcript has revealed no evidence to connect the injuries appellee sustained with his failure to wear a seat belt and since evidence regarding appellee's non-usage of his seat belt is not sufficient to justify giving a "seat belt" charge, we find no error in the trial court's refusal to give such a charge. See *F.A.F. Motor Cars v. Childers*, 181 Ga. App. 821, 822 (3) (a) (354 SE2d 6) (1987).

11. In conclusion, the City has enumerated no error requiring reversal of the judgment below. In light of our holding in Division 4, supra, however, in which we upheld the jury's verdict dividing the liability for the $2,500,000 award equally so as to render the City responsible for $1,250,000, we affirm the judgment of the trial court with direction that it vacate that part of its judgment erroneously disregarding the clear intendment of the jury's verdict and enter judgment for that amount accordingly.

12. Our holding affirming the judgment in favor of appellee against the City renders it unnecessary for us to address appellee's cross-appeal in Case No. 76076 and, therefore, it is dismissed.

### 76077. Cook v. Moreland et al.

13. Appellee made this court's consideration of his appeal from the grant of summary judgment to Moreland and Burnham contingent upon a determination by this court that a retrial of this lawsuit was required. Since no retrial is necessary, Case No. 76077 is likewise dismissed.

*Judgment affirmed with direction in Case No. 76075. Judgment reversed in Case No. 76211. Appeal dismissed in Case Nos. 76076, 76077, and 76212. Birdsong, C. J., Banke, P. J., Pope and Benham, JJ., concur. Beasley, J., concurs in Divisions 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13 and in the judgment. McMurray, P. J., and Carley, J., dissent. Deen, P. J., dissents dubitante.*

CARLEY, Judge, dissenting in part.

I concur in the majority's reversal of appellee's judgment against the appellant Atlanta and West Point Railroad Company. I also concur in that portion of the majority's opinion which holds the appellant City of Fairburn's enumeration of the general grounds is without

merit. I cannot, however, concur in the majority's ultimate affirmance of judgment in favor of appellee against the appellant City of Fairburn. In Division 10 of its opinion, the majority holds that the trial court did not err in sustaining appellee's objection to the admission into evidence of certain deposition testimony which had been given by his treating physician. The sustained objection was to the lack of a sufficient showing of the witness' expert qualifications to give the testimony. In holding that there was no error, the majority purports to distinguish *Andean Motor Co. v. Mulkey*, 251 Ga. 32 (1) (302 SE2d 550) (1983). In my opinion, *Mulkey* cannot be distinguished and, as controlling authority, mandates the reversal of the judgment in Case Number 76075. Accordingly, I must respectfully dissent to the majority's failure to grant a new trial as to the appellant City of Fairburn.

During the deposition of appellee's treating physician, there was no objection raised to his expert qualifications to give the testimony which was subsequently disallowed pursuant to appellee's objection at trial. "Extended discussion or citation of authorities is not required to demonstrate that if [appellee] had objected during the deposition to the absence of proof of the witness' competence to testify as an expert, . . . counsel [for the appellant City of Fairburn] might have been able to cure this ground of objection by proof of the witness' qualifications. [Appellee] thus waived his right to raise this objection. OCGA § 9-11-32 (d) (3) (A). . . . [Cit.]" *Andean Motor Co. v. Mulkey*, supra at 251 (1). The majority seemingly interprets *Mulkey* as standing for the proposition that, notwithstanding the provisions of OCGA § 9-11-32 (d) (3) (A), the sustaining or overruling of an objection which is raised at trial to a deponent's expert qualifications to give certain testimony is a matter which is addressed to the trial court's discretion. According to the majority, *Mulkey* was a case wherein the Supreme Court affirmed the trial court's exercise of its discretion to admit evidence over an objection to the deponent's expert qualifications, whereas the present case is simply one wherein the trial court was authorized to exercise its discretion to exclude the deposition testimony over that objection. However, it was only *this* court which addressed the trial court's determination to sustain or overrule a trial objection to the deposition testimony in terms of the exercise of discretion. See *Mulkey v. Gen. Motors Corp.*, 164 Ga. App. 752 (299 SE2d 48) (1982). The Supreme Court reversed this court but, in so doing, the Supreme Court did *not* hold that it was the trial court's exercise of its discretion which authorized it to admit the evidence over the objection which had not been raised during the deposition. Instead, the Supreme Court based its holding *solely* upon the provisions of OCGA § 9-11-32 (d) (3) (A). Accordingly, contrary to the majority, I construe *Mulkey* to stand for the proposition that, in ruling on an objection at trial to the expert qualifications of a deponent,

it is only the provisions of OCGA § 9-11-32 (d) (3) (A) which are controlling, not the exercise of discretion of the trial court. Under OCGA § 9-11-32 (d) (3) (A), any objection by appellee to the deposition testimony of his treating physician was waived. The majority cites no case which supports its proposition that the trial court has discretion to sustain an objection to the admission of evidence at trial, which objection has already been waived *as a matter of law.*

The majority also attempts to distinguish *Mulkey* by relying upon the fact that the deposition in the case at bar sets forth the deponent's expert qualifications in some detail, whereas there was comparatively little evidence adduced as to the witness' expertise with regard to the issue involved in *Mulkey.* According to the majority, this serves to demonstrate that the appellant City of Fairburn could not have "cured" the objection which was subsequently raised at trial to the admission of the deponent's testimony, even if that objection had been raised at the deposition. The majority fails to consider that, regardless of the extent of the detail which may have been adduced during the deposition, the point in *Mulkey* is identical to the point in the present case: The party who proffered the deposition testimony at trial was not put on notice of any objection to the expert qualifications of the witness so as to be afforded an opportunity to attempt to make a timely cure of any possible defect in the deposition testimony. We cannot say with any degree of certainty that, had counsel for the appellant City of Fairburn been apprised of the need to do so, he would *not* have been able to proffer additional testimony to demonstrate the expert qualifications of the deponent to give his opinion on the specific issue in question.

It is my opinion that *Mulkey* is applicable and controlling and that we should reverse judgment in favor of appellee and order a new trial as against the appellant City of Fairburn. Accordingly, I must respectfully dissent to the affirmance of the judgment in Case No. 76075.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 8, 1988 —
REHEARINGS DENIED JULY 27, 1988

*Gary H. Brakefield, Kirby A. Glaze, George E. Glaze,* for City of Fairburn.

*Charles H. Ivy, Joseph C. Chancey, Harold N. Hill, Jr.,* for Cook.

*Jack H. Senterfitt, Richard T. Fulton, William B. Brown,* for At-

lanta & West Point Railroad.