## A92A0587. CITY OF ATLANTA v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY et al.
### (419 SE2d 330)

McMURRAY, Presiding Judge.

This appeal arose after Patricia Babin Bauer was killed when the vehicle she was operating on a three-laned portion of DeKalb Avenue in the City of Atlanta ("Atlanta") collided head-on with a passenger bus operated by Metropolitan Atlanta Rapid Transit Authority ("MARTA"). The decedent's estate and members of her family ("the Bauers") filed a complaint against MARTA and its bus driver, Warren Gould, for negligence and against Atlanta for nuisance. MARTA and Gould cross-claim for contribution, alleging that Atlanta created and maintained a nuisance which contributed to the fatal collision. The Bauers dismissed the complaint, settling with MARTA for $1,100,000. Atlanta did not join in the settlement and the case was tried before a jury on the contribution cross-claim.

At about 8:00 in the evening on June 4, 1987, Warren Gould, acting in the scope of his employment as a MARTA bus driver, was operating a passenger bus near the end of a 3.4 mile stretch of DeKalb Avenue which consists of two outside opposing traffic lanes and a middle lane bounded with double-dashed yellow lines. (The middle lane is reversible and is regulated by overhead traffic control devices. These traffic control devices display opposing red and green signals during peak traffic periods and, during non-peak traffic periods, the devices signal a flashing yellow "X" in both directions.) Gould moved the bus into the middle lane against yellow flashing "X" signals, attempting to pass an erratically moving vehicle. (Gould testified that it was his understanding that a middle lane regulated by flashing yellow "X" signals could be used "for emergency purposes to get around anything that may be impeding traffic in the right lane.") The decedent was then traveling against the flashing yellow "X" signals from the opposite direction, just entering the middle lane from a stretch of DeKalb Avenue that consists of four evenly divided traffic lanes. (A photograph of the transition from four to three lanes reveals the centerline of the four-laned road abruptly ending after bisecting the mid-

dle lane of the three laned portion of DeKalb Avenue.) The vehicles approached head-on while negotiating a curve which limited distance visibility and collided after both drivers evasively steered into the same lane of traffic. The decedent was pinned in her automobile and died about 30 minutes after the collision.

Variable-lane traffic control devices, functioning with flashing yellow "X" signals, were installed by Atlanta on DeKalb Avenue in the 1950s. These devices were replaced in the 1970s when a rapid transit railway was constructed parallel to one side of DeKalb Avenue. The replacement equipment also functioned with opposing flashing yellow "X" signals and operated through the June 4, 1987, collision.

During two years before the collision, Atlanta recorded several accidents caused by confusion over the directional meaning of the flashing yellow "X" signals on DeKalb Avenue. Atlanta also received direct reports from motorists reflecting misunderstanding over the use and function of the middle lane of DeKalb Avenue when flashing yellow "X" signals are functioning. In fact, a 19-year veteran engineer with Atlanta's Bureau of Traffic and Transportation recognizes that flashing yellow "X" signals are confusing and do not convey any specific meaning with regard to use of regulated traffic lanes.

The Manual on Uniform Traffic Control Devices for Streets and Highways (the "manual"), a body of regulations published by the Federal Highway Administration and adopted by Atlanta, provides that "[a] flashing YELLOW X means that a driver is permitted to use a lane over which the signal is located for a left turn." However, the manual warns that such signals should be used only "[w]here feasible [and] with due caution." The manual also cautions that any driver using a lane with an over-head flashing yellow "X" signal "may be sharing that lane with opposite flow left-turning vehicles."

The jury returned a verdict, finding that Atlanta created or maintained a nuisance on DeKalb Avenue and that the nuisance was a proximate concurring cause of the collision. The trial court entered judgment for MARTA and Gould in the principal amount of $550,000. Atlanta filed this appeal after the denial of its motion for a judgment notwithstanding the verdict. *Held:*

1. Atlanta contends the trial court erred in failing to dismiss the cross-claim, arguing that contribution claims pertain only to joint tortfeasors and not to "defendants in nuisance." This enumeration inaccurately assumes that MARTA and Gould were sued as joint participants in the creation of a nuisance.

OCGA § 51-12-32 provides for contribution among joint tortfeasors. However, "joint participants in the creation of a nuisance are *not* jointly and severally liable for the full total of plaintiffs' damages, but only for their individual parts." *Gilson v. Mitchell,* 131 Ga.

App. 321, 328 (205 SE2d 421), affirmed in *Mitchell v. Gilson,* 233 Ga. 453, 454 (211 SE2d 744). In the case sub judice, it was never alleged that MARTA and Gould were joint participants in the creation of a nuisance. MARTA and Gould were sued along with Atlanta for indivisible losses allegedly stemming from separate and distinct wrongful acts, i.e., negligence by a MARTA employee and the creation and maintenance of a nuisance by Atlanta. See *Parks v. Palmer,* 151 Ga. App. 468, 470 (2) (260 SE2d 493). Consequently, MARTA and Gould were authorized in asserting a cross-claim against Atlanta for allegedly contributing to the Bauers' damages. OCGA § 51-12-32. The trial court did not err in refusing to dismiss the contribution cross-claim.

2. Atlanta contends the trial court erred in failing to dismiss the cross-claim, arguing that MARTA and Gould failed to give ante litem notice within six months of the collision as is required by OCGA § 36-33-5. This contention is without merit.

OCGA § 36-33-5 is in derogation of the common law and must be strictly construed against the municipality. *Hicks v. City of Atlanta,* 154 Ga. App. 809, 810 (270 SE2d 58). This Code section requires ante litem notice for damage claims against municipalities which arise "on account of injuries to person or property. . . ." OCGA § 36-33-5 (a). Nothing in this statute requires ante litem notice for claims by joint tortfeasors against municipalities for contribution. Consequently, the contribution claim filed against Atlanta by MARTA and Gould was not conditioned upon the ante litem notice provision of OCGA § 36-33-5. To say otherwise, would require defendants to anticipate within six months of any incident giving rise to damages "on account of injuries to person or property" claims for contribution against municipalities which may not accrue for several years. See *Olsen v. Jones,* 209 NW2d 64 (1973).

3. Atlanta contends the trial court erred in denying its motion for judgment notwithstanding the verdict. Atlanta argues that the flashing yellow "X" signals and the road markings on DeKalb Avenue do not constitute a nuisance because these traffic control devices are authorized by the manual and were functioning as intended, i.e., not obscured or malfunctioning at the time of the collision. This contention is without merit.

The law does not require that an instrumentality be functioning improperly before it may be regarded as a nuisance. *City of Fairburn v. Cook,* 188 Ga. App. 58 (372 SE2d 245). On the contrary, in the case of *Porter v. City of Gainesville,* 147 Ga. App. 274, 276 (248 SE2d 501), involving a grant of summary judgment to the City of Gainesville, this Court held that genuine issues of material fact remained for jury consideration since the City failed to pierce the pleadings of that plaintiff wherein it was alleged that the design of the instrumentality was "inherently dangerous and was a continuing threat to anyone who

might choose to use it."

" ' " 'A municipal corporation, like any other individual or private corporation, may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or municipal function. . . .' " (Cit.)' [Cit.]" *City of Fairburn v. Cook,* 188 Ga. App. 58, 64 (6), 65, supra. "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." OCGA § 41-1-1. " ' " 'In *City of Bowman v. Gunnells,* 243 Ga. 809 (2) (256 SE2d 782) (1979), the Supreme Court set out three guidelines to define a nuisance for which a city may be liable. First, the defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. Second, the act must be of some duration. Third, the city must have failed to act within a reasonable time after knowledge of the defect or dangerous condition.' (Cit.)" ' *City of Eatonton v. Few,* 189 Ga. App. 687 (1) (377 SE2d 504) (1988). ' "Under some factual situations, it can be held as a matter of law that no nuisance exists; however, that question ordinarily is a question of fact for the jury." (Cits.)' *Whiddon v. O'Neal,* 171 Ga. App. 636, 638 (320 SE2d 601) (1984)." *Grier v. City of Atlanta,* 200 Ga. App. 575, 576 (408 SE2d 794).

In the case sub judice, there is uncontradicted evidence that, "to be effective, a traffic control device should . . . [c]onvey a clear, simple meaning [and] . . . [c]ommand respect of road users." However, Atlanta's deputy director with the Bureau of Traffic and Transportation affirmed on cross-examination that flashing yellow "X" signals are confusing and do not convey any specific meaning with regard to use of regulated traffic lanes and he indicated that the flashing yellow "X" signals on DeKalb Avenue do not command the motoring public's respect, testifying that he has traveled DeKalb Avenue and witnessed motorists misusing the middle lane for passing. This evidence, evidence that Atlanta maintained flashing yellow "X" signals on DeKalb Avenue despite knowledge that a hazardous condition existed due to confusion over the meaning of the flashing yellow "X" signals and evidence that such confusion caused MARTA's bus and the decedent's vehicle to be in the same lane of traffic in an area of DeKalb Avenue with obscured distance visibility and with an abrupt lane transition is sufficient to authorize a finding that Atlanta created and maintained a nuisance which contributed to the fatal collision. Compare *Mayor &c. of Savannah v. Palmerio,* 242 Ga. 419, 422 (2) (249 SE2d 224) and *Hancock v. City of Dalton,* 131 Ga. App. 178 (205 SE2d 470). Consequently, the trial court did not err in denying Atlanta's motion for judgment notwithstanding the verdict. *Bryant v. Colvin,* 160 Ga. App. 442, 444 (287 SE2d 238).

*Judgment affirmed. Cooper, J., concurs. Sognier, C. J., concurs*

*specially.*

SOGNIER, Chief Judge, concurring specially.

I agree with the judgment reached by the majority. However, I believe that further explication is necessary of the conclusion in Division 3 that the evidence proffered at trial authorized the jury to find that Atlanta created and maintained a nuisance.

As the majority points out, the basis for Atlanta's contention that it could not be found to have either created or maintained a nuisance was that the flashing yellow "X" signals were authorized by the manual and were functioning as intended.

However, George Black, a traffic engineer and Gwinnett County's Director of Transportation, testified that the manual cautions that "traffic engineering judgment should be exercised at all times" because what might work in one area will not work in another. This caution clearly applied to the use of flashing yellow "X" signals, which the manual provides should be used "where feasible . . . over a lane to permit use of that lane for left turns, with due caution." The manual states that yellow flashing "X" signals mean the lane may be used for left turns from both directions. Both Black and Howard Harris, a deputy director of the Atlanta Bureau of Traffic and Transportation, acknowledged that the flashing yellow "X" signals could not be used for the purpose set forth in the manual over most of this portion of DeKalb Avenue when traveling west because of the presence of the MARTA rail line running parallel to and just south of DeKalb Avenue. The MARTA rail line made left turns impossible for westbound traffic except at one or two intersections. Thus, based on this testimony, the jury reasonably could have concluded that flashing yellow "X" signals would not work properly on that particular stretch of DeKalb Avenue, and were therefore authorized to conclude that the signals were not functioning properly, but instead were being interpreted by drivers traveling west on DeKalb Avenue as a signal to use the center lane as a passing lane, a dangerous use for which the lane was not intended.

The manual also provides that "[t]he decision to use a particular device at a particular location should be made on the basis of an engineering study of the location," which Harris indicated had not been done when the signals were replaced after construction of the MARTA rail line even though the effect of that construction was to eliminate most left turn usage of the center lane by westbound traffic.

Thus, evidence was introduced at trial from which the jury could have concluded that installing such signals on the portion of DeKalb Avenue where the accident at issue occurred was not "feasible," and which authorized the jury to find that Atlanta created a nuisance in installing the flashing yellow "X" signals.

In addition, Black testified that a number of accidents occurred on that portion of DeKalb Avenue. Harris admitted that he knew the lane was not being used in the manner intended, and that the Bureau had received a number of complaints regarding the signals as well as inquiries regarding their meaning, but he had not read the reports of these complaints and inquiries until after the incident in issue. This evidence showed that drivers on DeKalb Avenue were either confused or mistaken about the meaning of the signals or were using the center lane improperly despite the signals, a condition Harris acknowledged as dangerous. Therefore, because there was evidence that Atlanta had failed to act within a reasonable time after acquiring this knowledge, the jury was authorized to conclude that Atlanta had maintained a nuisance. *City of Fairburn v. Cook,* 188 Ga. App. 58, 65-66 (7) (372 SE2d 245) (1988).

DECIDED MAY 18, 1992 —
RECONSIDERATION DENIED JUNE 1, 1992 — 

*Michael V. Coleman, Joe M. Harris, Jr., Sarah I. Mills,* for appellant.

*Gorby, Reeves, Moraitakis & Whiteman, Nicholas C. Moraitakis, Martha D. Turner, Michael E. Fisher,* for appellees.