## 33708. MAYOR &c. OF SAVANNAH v. PALMERIO et al.

MARSHALL, Justice.

The plaintiffs, who are husband and wife, were injured in a head-on collision in the middle, or reversible, lane of a three-laned viaduct on U. S. Highway 80 on Bay Street in Savannah, Georgia. They brought suit in Chatham State Court against the Mayor & Aldermen of the City of Savannah, as well as the State Highway Department of Georgia (now the Department of Transportation). They argued that the failure to post proper signals to warn motorists of the reversible lane

usage resulted in such a hazardous condition that it amounted to the maintenance of a nuisance. See *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834 (165 SE2d 141, 34 ALR3d 1002) (1968).

The trial court granted the Department of Transportation's motion to dismiss on the ground of sovereign immunity. *State Hwy. Dept. v. Barrett,* 124 Ga. App. 703 (185 SE2d 624) (1971); *Tounsel v. State Hwy. Dept.,* 180 Ga. 112 (178 SE 285) (1934). After discovery, the Mayor & Aldermen of the City of Savannah filed a motion for summary judgment which was denied, and on interlocutory appeal the Court of Appeals affirmed. See *Mayor &c. of Savannah v. Palmerio,* 130 Ga. App. 238 (202 SE2d 677) (1973).[1] The case proceeded to trial before a jury. The city filed a motion for a directed verdict, at the close of the plaintiffs' evidence and at the close of the case. The trial court reserved its ruling on the city's motion for directed verdict. A jury verdict was returned in favor of the city, and judgment was entered thereon. Pending a decision by the trial court on the plaintiffs' motion for new trial and within 30 days of entry of the judgment, the trial court granted the city's motion for directed verdict. The plaintiffs' motion for new trial was later denied.

On appeal, the Court of Appeals held that the order of the trial court directing a verdict in favor of the city after the jury verdict had been rendered was void. The Court of Appeals reversed the judgment and remanded the case for a new trial, due to errors in the trial court's instructions to the jury as to the circumstances under which a municipal corporation can incur liability for maintaining a nuisance. We granted certiorari. *Held:*

1. The Court of Appeals was incorrect in holding that the order of the trial court granting the city's motion for directed verdict was void.

The Court of Appeals predicated this ruling on the

---

[1] Another interlocutory appeal was taken on the question of whether the deposition of an expert witness could be taken by means of videotaping. See *Mayor &c. of Savannah v. Palmerio,* 135 Ga. App. 147 (217 SE2d 430) (1975).

underlying assumption that the filing of a motion for judgment notwithstanding the verdict is a condition precedent to the post-verdict grant by the trial court of a motion for directed verdict.

CPA § 50 (b) (Code Ann. § 81A-150 (b); Ga. L. 1966, pp. 609, 656, as amended) allows the trial court to defer ruling on a motion for directed verdict and submit the case to the jury subject to a later determination of the legal questions raised by the motion. CPA § 50 (b) also requires a party who has moved for a directed verdict to file a motion for judgment notwithstanding the verdict within 30 days after entry of the judgment or, if a verdict was not returned, within 30 days after the jury has been discharged. However, CPA § 50 (b) does not by its express terms require that a motion for judgment notwithstanding the verdict be filed in order to preserve the jurisdiction of the trial court to rule on a motion for directed verdict after the verdict itself has been returned.

The Court of Appeals saw fit to impose such a rule because, as stated by the Court of Appeals, "[f]or us to rule otherwise would be to permit a trial judge to eliminate an appellate review of possible errors in his instructions to the jury by the granting of a directed verdict after the jury has returned a verdict and judgment entered on the verdict where no proper motion for judgment notwithstanding the verdict was ever entered." We agree with the Court of Appeals that the trial court can so insulate its jury charges from appellate review by granting a post-verdict motion for directed verdict. However, we see nothing objectionable in this, so long as the appellate court determines that the trial court was correct in granting the motion for directed verdict. A motion for directed verdict is properly granted if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. CPA § 50 (a). If the motion for directed verdict is properly granted, any question as to the correctness of the trial court's instructions to the jury is moot.

The holding of the Court of Appeals has the practical effect of prohibiting the trial judge from granting post-verdict the motion for directed verdict of the party in

whose favor the verdict was rendered. This is so because it would be wholly anomalous for the winning party to file a motion for judgment notwithstanding verdict.

The purpose of CPA § 50 (b), allowing the trial judge to submit the case to the jury and then granting a judgment notwithstanding the verdict, is to avoid the necessity for a retrial if the appellate court determines that the trial court erred in granting the judgment notwithstanding the verdict; under these circumstances, the appellate court then is in a position to simply reinstate the verdict. See 5A Moore's Federal Practice, ¶ 50.05[3], pp. 50-61 to 50-62 (2d Ed.). The present case illustrates that these same considerations of judicial economy militate in favor of allowing the trial judge to grant post-verdict the motion for directed verdict of the winning party. For, if the appellate court in this case were to determine that the jury charges were erroneous, but that the trial court correctly granted the city's motion for directed verdict, the necessity for a new trial would be avoided.

2. We therefore reach the merits of the city's motion for directed verdict. The order of the trial court granting the motion for directed verdict found that the complaint alleged, in essence, a nuisance under the theory of *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834, supra. However, the evidence disclosed that the Bay Street viaduct was a state-aid road with the then State Highway Board having exclusive authority and jurisdiction over the road at the time of the accident. See former Code Ann. § 68-1610 (a) and (b) (Ga. L. 1953, Nov.-Sess., pp. 556, 569)[2]; former

---

[2] Subsection (a) of former Code Ann. § 68-1610 provided, "The State Highway Board shall place and maintain such traffic control devices conforming to its manual and specifications, upon all State highways including those within all municipalities and counties, ..." Subsection (b) provided, "No other authority shall place or maintain any traffic-control devices upon any State highway under the jurisdiction of the State Highway Board except by the latter's permission." Former Code Ann. Ch. 68-16 was repealed by Ga. L. 1974, p. 633, which enacted Title 68A, the Uniform Rules of the Road.

Code Ann. § 95-1738 (Ga. L. 1961, pp. 469, 470, as amended)[3]; former Code Ann. § 95-604 (Ga. L. 1953, Nov.-Sess., pp. 367, 368).[4] *Mayor &c. of Woodbury v. State Hwy. Dept.,* 225 Ga. 723 (171 SE2d 272) (1969); *Davis v. City of Barnesville,* 80 Ga. App. 3 (54 SE2d 915) (1949); *Perkerson v. Mayor &c. of Greenville,* 51 Ga. App. 240 (180 SE 22) (1935). Furthermore, under the law at the time of the occurrence of the accident in this case, the municipalities were expressly relieved of all liability resulting from the failure to maintain portions of the state-aid system of roads lying within the corporate limits of a municipality. See former Code Ann. § 95-1741 (Ga. L. 1961, pp. 469, 471, as amended).[5] In addition, Code Ann. § 69-302 presently provides that, "Where municipal corporations are not required by statute to perform an act, they may not be held liable for exercising their discretion in failing to perform the same."

The State Highway Board had placed the lane markings on the road, but the City of Savannah had placed certain signs on the viaduct and the approach to

---

[3] Under former Code Ann. § 95-1738, responsibility was in the State Highway Board for construction and maintenance of state-aid roads within the corporate limits of a municipality. Code Ch. 95-17 was repealed by Ga. L. 1973, p. 949, which enacted Title 95A, the Georgia Code of Public Transportation.

[4] Former Code Ann. § 95-604 vested in the State Highway Board exclusive authority and jurisdiction for the erection and maintenance of signs, along the highways of this state composing the state-aid system of roads as it now or hereafter exists.

[5] Former Code Ann. § 95-1741 provided that, "The municipalities of this State are hereby relieved of any and all liability resulting from, or occasioned by, defects in those portions of the State-aid system of roads lying within the corporate limits of municipalities or resulting from the failure of the State Highway Board to maintain properly and in good repair any such portion, or portions, of the State-aid system of roads lying within the corporate limits of any municipality which it is said Board's responsibility to maintain under this Act."

the viaduct attempting to control reversible-lane usage. However, one of the signs was probably not visible to Mrs. Palmerio, who was driving, and she failed to see the other sign until it was too late to avoid the accident. Expert witnesses testified that there should have been larger signs and additional signs and that without proper signs the viaduct constituted a hazard to motorists. Traffic surveys did, however, indicate that the road had a low accident rate per miles traveled.

The trial court reasoned that the main thrust of the plaintiffs' complaint was that the city had created a nuisance by failing to act — that is, by failing to install proper traffic-control signals — rather than by having done an affirmative act creating a nuisance. *Town of Ft. Oglethorpe v. Phillips,* supra, was distinguished by the trial court on this basis. In distinguishing *Town of Ft. Oglethorpe v. Phillips,* supra, the trial court specifically noted that Mrs. Palmerio had not seen the signs placed by the city. Therefore, the plaintiffs were necessarily seeking to impose liability on the city for having failed to place traffic-control signals rather than for having placed them improperly.

In sum, the trial court ruled that the city was not liable to respond in damages to the plaintiffs for two interrelated reasons: (1) the city was not chargeable with maintaining a nuisance within the meaning of *Town of Ft. Oglethorpe v. Phillips,* supra; (2) the responsibility for placing traffic-control signals on the viaduct was in the state and not the city.

We think that the reasoning of the trial court is sound, and for reasons which are more fully developed in Division 3, infra, we hold that the trial court properly directed a verdict in favor of the city. We note that the Court of Appeals in a similar case, *Hancock v. City of Dalton,* 131 Ga. App. 178 (205 SE2d 470) (1974), reached essentially the same conclusions as the trial court in this case.

3. The Court of Appeals held that the trial court's charge to the jury, concerning the circumstances under which a municipal corporation can incur a liability for maintaining a nuisance, was error requiring the grant of a new trial.

Determining the correctness of this jury charge requires us to undertake an analysis of the Georgia law on municipal tort liability for maintenance of a nuisance. The law on this subject can be most easily stated in the form of the following propositions:

(a) A nuisance is anything that works hurt, inconvenience, or damage to another, and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. Code § 72-101.

(b) That which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance. *Delta Air Corp. v. Kersey,* 193 Ga. 862, 870 (20 SE2d 245) (1942); *Burrus v. City of Columbus,* 105 Ga. 42 (31 SE 124) (1898); *Ga. R. &c. Co. v. Maddox,* 116 Ga. 64 (4) (42 SE 315) (1902); *City of Atlanta v. Due,* 42 Ga. App. 797, 802 (157 SE 256) (1930).

(c) Thus, where the act is lawful in itself, it becomes a nuisance only when conducted in an illegal manner to the hurt, inconvenience or damage of another. *City of Quitman v. Underwood,* 148 Ga. 152 (96 SE 178) (1918); *Southland Coffee Co. v. City of Macon,* 60 Ga. App. 253 (3 SE2d 739) (1939); *Sheppard v. Ga. R. &c. Co.,* 31 Ga. App. 653, 656 (121 SE 868) (1923).

(d) A municipality is immune from suit for acts it performs which are authorized by law and executed in accordance with the judgment or conclusion reached by the municipal authority in the exercise of a governmental function. Code § 69-301; *City of Atlanta v. Due,* 42 Ga. App. 797, supra, p. 803; *Southland Coffee Co. v. Macon,* 60 Ga. App. 253, supra, p. 257; *City Council of Augusta v. Cleveland,* 148 Ga. 734 (98 SE 345) (1918).

(e) However, the municipality is liable where there is negligence or error in the execution of plans or specifications, adopted or prescribed by the municipality, that is, for negligence or error in the exercise of a ministerial duty. Code Ann. § 69-301; *City of Atlanta v. Due,* 42 Ga. App. 797, supra, p. 803; *Southland Coffee Co. v. Macon,* 60 Ga. App. 253, supra, p. 257.

(f) The municipal government is not, however, liable for negligence in the exercise of a governmental function. *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834, supra, pp. 835, 836; *Delta Air Corp. v. Kersey,* 193 Ga. 862, supra, p.

870; *Arthur v. City of Albany,* 98 Ga. App. 746, 747 (106 SE2d 347) (1958); *Archer v. City of Austell,* 68 Ga. App. 493, 495 (23 SE2d 512) (1942) and cits.

(g) A municipal corporation, like any other individual or private corporation, may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or municipal function. *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834, supra, pp. 837,838; *Ingram v. City of Acworth,* 90 Ga. App. 719, 720 (84 SE2d 99) (1954); *Archer v. City of Austell,* 68 Ga. App. 493, supra, p. 497; *Lewis v. City of Moultrie,* 27 Ga. App. 757 (110 SE 625) (1921) and cits.

(h) While it is true that a municipal corporation is not liable for its acts of negligence in discharging a governmental function, yet a municipal corporation cannot, under the guise of performing a governmental function, create a nuisance dangerous to life or health. *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834, supra, p. 838; *Delta Air Corp. v. Kersey,* 193 Ga. 862, supra, p. 870; *City of Blue Ridge v. Kiker,* 189 Ga. 717 (7 SE2d 237) (1940); *City Council of Augusta v. Cleveland,* 148 Ga. 734 (98 SE 345) (1918); *Kea v. City of Dublin,* 145 Ga. 511 (89 SE 484) (1916); *Love v. City of Atlanta,* 95 Ga. 129 (22 SE 29) (1894); *Archer v. City of Austell,* 68 Ga. App. 493, supra, p. 497.

(i) To be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury (*City of East Point v. Terhune,* 144 Ga. App. 865 (242 SE2d 728) (1978); *Morin v. City of Valdosta,* 140 Ga. App. 361 (231 SE2d 133) (1976); *Ethridge v. City of Lavonia,* 101 Ga. App. 190 (112 SE2d 822) (1960)); the municipality must have knowledge or be chargeable with notice of the dangerous condition (*Hutcheson v. City of Jesup,* 132 Ga. App. 84 (207 SE2d 547) (1974); *Stanley v. City of Macon,* 95 Ga. App. 108 (97 SE2d 330) (1957); *City Council of Augusta v. Jackson,* 20 Ga. App. 710 (93 SE 304) (1917)); and, if the municipality did not perform an act creating the dangerous condition, such as installing and maintaining

a defective traffic signal as in *Town of Ft. Oglethorpe v. Phillips,* supra, the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act. *Bowen v. Little,* 139 Ga. App. 176 (228 SE2d 159) (1976);*Hancock v. City of Dalton,* 131 Ga. App. 178, supra.

The jury charge presently under consideration was a correct statement of the foregoing propositions of law. Accordingly, the Court of Appeals erred in holding the charge to be erroneous.

4. In the present case, the plaintiffs' evidence failed to show that the city had committed an act which created the dangerous condition or that the city had failed to perform an act that it was under a duty to perform which would rectify the dangerous condition. Therefore, the city's motion for directed verdict was correctly granted.

The judgment of the Court of Appeals is accordingly reversed.

*Judgment reversed. All the Justices concur, except Nichols, C. J., and Hill, J., who concur in the judgment only, and Hall, J., who concurs specially.*

ARGUED SEPTEMBER 20, 1978 — DECIDED OCTOBER 25, 1978.

*James B. Blackburn, Stanley E. Harris, Jr.,* for appellant.

*John R. Young, John Wright Jones, Anton F. Solms, Jr., Arthur K. Bolton, Attorney General, Roland F. Matson, Assistant Attorney General,* for appellees.

HALL, Justice, concurring specially.

I concur in the judgment only. In my opinion the time is long past for this court to re-examine its opinion in *Town of Ft. Oglethorpe v. Phillips,* 224 Ga. 834 (165 SE2d 141) (1968) on the question of what is a nuisance with respect to municipal liability. As a respected authority on this subject has noted: "Ignoring the controversy below on the correct approach to defining a nuisance, the court emphasized the allegations of actual knowledge of the defective light by the governing authorities for more than two weeks, their knowledge of six collisions on the day the plaintiff was injured, and their continued operation of the

light. These allegations 'set forth the operation and maintenance of a defective condition that could work damage to anyone who came in proximity to it,' and thus the maintenance of a nuisance. At the least, therefore, the Supreme Court's conclusion in *Town of Fort Oglethorpe v. Phillips* appears to open a Pandora's box for the nuisance concept in municipal liability." Sentell, Local Government Law, 21 Mercer L. R. 183, 195 (1970).