## 62242. HORTON v. CITY OF ATLANTA.

McMURRAY, Presiding Judge.

On January 9, 1975, Leroy Horton was arrested for public drunkenness and later committed to the Atlanta prison farm. On or about January 13, 1975, at approximately 10 a.m. he reported to the nursing station of the prison farm complaining of headache and stating a history of high blood pressure. At that time he exhibited open sores and a rash and upon examination of his clothes and person lice infestation was evident. He was given a bottle of "Kwell" shampoo (a commercially available delousing shampoo medicine), clean clothes and was told to take a shower. At about 10:30 a.m. he brought his lice-infested street clothing to the clothes room of the prison farm ostensibly for delousing. Another inmate sprayed his clothing on instructions from his supervisor (a police officer) with a substance used by the prison farm to destroy body vermin. When the supervisor left the room Horton asked the inmate to spray his back, and, in response to this request, the same substance was rubbed on

Horton's back. Some two or three hours later Horton was returned to the nurse's station in a weakened condition, elevated blood pressure and pulse (but temperature normal) and stating that he had been "sprayed for bugs downstairs." He was returned to his cell, but about an hour later he was shaking and moaning in his bunk and complained of pains in his chest. He was then scheduled to be sent to Grady Hospital for evaluation. However, he was not sent on the regular bus and thereafter at about 2:30 p.m. he was examined by the nurse and found to be dazed, very unresponsive, cold to the touch, exhibiting shallow breathing, weak pulse and low blood pressure. An ambulance was summoned, oxygen was administered, as well as external cardiac massage and the suction of copious amounts of secretions from his mouth. At 3:42 p.m. on January 13, 1975, he was admitted to the hospital and on February 4, 1975, he died.

A temporary administrator of his estate was duly appointed and, as plaintiff, the administrator seeks damages, alleging the cause of his death as due to poisoning when the poisonous substance was sprayed on his back at the prison farm by an inmate, the same being a "pesticide" or "economic poison" used in the prison farm for the purpose of killing body lice. Count 1 alleged that the defendant City of Atlanta was negligent in keeping a quantity of this poisonous substance available in an unmarked condition to be used by persons who did not know of its poisonous nature or possible toxic effect on humans, and the presence of the unlabeled poison under the circumstances where it could be used by those not familiar with its toxic nature constituted a public nuisance. Plaintiff sought damages for the wrongful death of the decedent as a direct and proximate result of the public nuisance maintained by the defendant in violation of its legal duties imposed seeking to recover the sum of $100,000. Count 2 sought damages in the same amount for the great pain and suffering caused by the public nuisance maintained by the defendant, alleging the ante litem notice to the municipality had been given and the claim rejected.

The defendant answered, in general, denying the claim. The wrongful death count was subsequently stricken on motion by the defendant, and the case proceeded to trial with the plaintiff insisting only on the action for pain and suffering. At the conclusion of plaintiff's evidence defendant moved for directed verdict which was granted, and plaintiff appeals. *Held:*

The basis for the ruling by the trial court in directing the verdict in favor of defendant was "that the plaintiff failed to present any evidence of a regularly repeated or continuous action by the City [defendant] or its agents which caused hurt, inconvenience or injury, and failed to present any evidence that the City had knowledge or

constructive notice of a dangerous condition at its prison farm, thus failing to present any evidence of the two essential elements of a legal nuisance, as set forth in *Mayor and Council [sic] of Savannah v. Palmerio,* 242 Ga. 419, 426-427 (1978) [(249 SE2d 224)]."

While it is clear that the pleadings were sufficient to state a claim against the defendant city on the theory of nuisance (see *Winston v. City of Austell,* 123 Ga. App. 183, 185 (6, 7) (179 SE2d 665)), nevertheless, under the recent cases following *Palmerio,* supra, with reference to municipal tort liability for maintenance of a nuisance, the evidence here failed to establish that the defendant was "performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition," or that the defendant had knowledge or was chargeable with notice of the dangerous condition thus distinguishing *Palmerio,* supra, from the case of *Town of Fort Oglethorpe v. Phillips,* 224 Ga. 834, 837-838 (165 SE2d 141). See in this connection *City of Atlanta v. Leake,* 243 Ga. 20 (252 SE2d 450), reversing *Leake v. City of Atlanta,* 146.Ga. App. 57 (245 SE2d 338). See also *City of East Point v. Terhune,* 144 Ga. App. 865, 866-867(1) (242 SE2d 728); *City of LaGrange v. Whatley,* 146 Ga. App. 174 (246 SE2d 5). In view of the decisions in the above and foregoing cases, we have no alternative but to affirm the judgment.

*Judgment affirmed. Quillian, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 23, 1981 —
REHEARING DENIED OCTOBER 7, 1981

*Sidney L. Moore, Jr.,* for appellant.
*Mary Carole Cooney, Marva Jones Brooks,* for appellee.