A07A1871. HELLER et al. v. CITY OF ATLANTA et al.
(659 SE2d 617)

MIKELL, Judge.

This is an appeal from the grant of dispositive relief to all governmental defendants in a wrongful death and nuisance action filed by Ed Heller, individually and as administrator of the estate of his deceased wife, Patricia Heller. Mrs. Heller was killed on January 29, 2003, when the taxicab in which she was riding spun out of control on a wet overpass on Interstate 85 and collided with a tree. The taxicab's tires had little or no tread, but the vehicle had passed a mandatory City of Atlanta (the "City") inspection the previous day. Heller sued the City; Greg Shepard, a Vehicle for Hire Inspector employed by the City in the Atlanta Police Department's Bureau of

---

Taxicabs and Vehicles for Hire ("Taxi Bureau"), who inspected the taxicab; the state Department of Transportation ("DOT"), which maintained the roadway; Abdallah Adem, the cab driver; and United Express Cab Company ("United"), the company for whom Adem drove the cab. The trial court granted summary judgment to the City on Heller's nuisance claim, granted summary judgment to Shepard on the basis of official immunity, and dismissed the claims against the DOT on sovereign immunity grounds. Heller appeals. Because we find that Shepard's act of inspecting the tires was a ministerial function, we reverse the grant of summary judgment to Shepard. Further, because the trial court erred in concluding that the DOT was excused from liability by the inspection and permitting exceptions to the waiver of sovereign immunity in the Georgia Tort Claims Act ("GTCA"),[1] we reverse the grant of the DOT's motion to dismiss. We affirm the grant of summary judgment to the City on the nuisance claim.

> On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.[2]

So viewed, the evidence shows the following relevant facts.

Adem brought his taxicab to the Taxi Bureau on January 28, 2003, for a semi-annual inspection, which is required in order to maintain a valid Certificate of Public Necessity and Convenience ("Certificate") issued by the City. The 1995 Code of Ordinances of the City of Atlanta ("City Code") Sec. 162-34 (c) (2) (a), requires that "tires [among all other exterior parts of the taxicab] shall be inspected to ascertain that each is functioning properly." Shepard performed the inspection. Although he passed the United taxicab, he did not complete the inspection sheet, which lists all the exterior and interior parts of the vehicle separately. The list has a box next to each part, and the inspector is supposed to mark "yes" or "no" to indicate whether the part, including tires, is functioning properly. Shepard simply wrote "pass" on the front of the form without checking any box.

On the following day, Mrs. Heller, a 51-year-old consultant from Boston who earned more than $500,000 annually, arrived at the Atlanta airport and entered Adem's taxicab at 11:00 a.m. It was

---

[1] OCGA § 50-21-24 (8), (9).

[2] (Citation omitted.) *Brown v. Taylor*, 266 Ga. App. 176 (596 SE2d 403) (2004).

raining, and the roads were wet. Adem proceeded northbound on Interstate 85. The taxicab began spinning out of control while driving around a curve in the left-hand lane near the Hapeville overpass, crossed three lanes of traffic, and crashed into a large tree 20 or more feet away from the edge of the acceleration lane, killing Mrs. Heller instantly. Adem was charged with vehicular homicide in the second degree, to which he pleaded guilty on August 23, 2005. Specifically, Adem pleaded guilty to causing Mrs. Heller's death by violating two laws: OCGA § 40-8-74 (e) (1), which mandates that "[a]ll tires . . . [s]hall have not less than 2/32 inch tread measurable in all major grooves," and OCGA § 40-6-180, driving too fast for conditions. The affidavit for his arrest warrant reflects that the taxicab had zero tread on the rear tires.

1. In his first enumeration of error, Heller challenges the grant of summary judgment to Shepard on official immunity grounds, arguing that his acts or omissions during the inspection of the taxicab were ministerial, not discretionary. Heller further alleges that Shepard negligently inspected the taxicab, that as a result of the negligent inspection, Adem was allowed to drive with slick tires, and that the slick tires were a proximate cause of Mrs. Heller's death.

The doctrine of official immunity provides that a public officer or employee may be held personally liable for his negligent ministerial acts, but he is immune from damages caused by his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority.[3] The difference between ministerial and discretionary acts is explained as follows:

> A discretionary act is one calling for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. On the other hand, a ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.[4]

In deciding whether an action is discretionary or ministerial, the court must focus on the character of the specific actions taken by the government official or employee, not the general nature of the job.[5]

---

[3] *Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994). See also Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

[4] (Citation omitted.) *Clive v. Gregory*, 280 Ga. App. 836, 841-842 (2) (635 SE2d 188) (2006).

[5] Id. at 842 (county building inspector's duty to inspect barn was ministerial and official immunity would not apply if, as alleged, he performed no inspection at all); *Meagher v. Quick*, 264 Ga. App. 639, 643-644 (1) (594 SE2d 182) (2003) (police officers were not entitled to official

Under this standard it makes no difference that the official is required to perform discretionary acts if the complained-of act is more properly characterized as ministerial. The grant of qualified immunity, then, is really more in the nature of a transitory privilege rooted in the fear that a contrary rule would inhibit the judgment upon which good government rests. The single overriding factor is whether the specific act from which liability allegedly arises is discretionary or ministerial.[6]

This determination is made on a case-by-case basis.[7]

In the case at bar, the specific action of which Heller complains is the manner in which Shepard inspected the tires of the taxicab at issue. Shepard testified that he inspects tires by looking at them from a standing position. In so doing, Shepard asserts that he is required to exercise judgment, rendering the act discretionary.[8] We do not agree. "[T]he execution of a specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion."[9] Checking tires for proper tread depth is a simple, ministerial task. There is a state law which provides that "[a]ll tires . . . [s]hall have not less than 2/32 inch tread measurable in all major grooves."[10] There is evidence that the tires which Shepard claims to have inspected did not have tread depth of at least 2/32 of an inch. Shepard points out, however, that nothing in the City Code specifies the manner in which he must check the tires.[11] He testified that vehicle for hire inspectors are neither authorized nor trained to enforce state codes; that he was unaware of the required tread depth

immunity from a wrongful death action based on their failure to complete a Family Violence Report, as required by OCGA § 17-4-20.1 (c), after responding to a complaint of child abuse); *Happoldt v. Kutscher*, 256 Ga. App. 96, 98-99 (1) (567 SE2d 380) (2002) (county policy requiring employees to inspect construction sites and to review plats to ensure compliance with all requirements of the county ordinance involved performance of ministerial tasks).

[6] (Citations and punctuation omitted.) *Swofford v. Cooper*, 184 Ga. App. 50, 52 (1) (360 SE2d 624) (1987), aff'd, *Cooper v. Swofford*, 258 Ga. 143 (368 SE2d 518) (1988).

[7] *Swofford*, supra, 184 Ga. App. at 52 (1).

[8] See, e.g., *Woodard v. Laurens County*, 265 Ga. 404, 407 (2) (456 SE2d 581) (1995) (contention that procedures established by county employees for discovering and removing limbs that obscured vision at stop sign were inadequate deemed allegation that county employees were negligent in their performance of a discretionary act); *Peele v. Dobbs*, 196 Ga. App. 684 (396 SE2d 600) (1990) (allegation that building inspector inspected chimney, but failed to use sound judgment, alleged a violation of a discretionary function).

[9] (Punctuation and footnote omitted.) *Golden v. Vickery*, 285 Ga. App. 216, 218 (645 SE2d 695) (2007).

[10] OCGA § 40-8-74 (e) (1).

[11] Compare *Golden*, supra at 221 (city worker's decision to insulate high-voltage electric lines rather than to relocate or de-energize them held discretionary because state law gives worker discretion as to what method to use).

under state law for passenger vehicles, even though he has been a supervisor since 2003; and that he does not use a mechanical device to measure tread depth.

It is true that the official job description for a City Vehicle for Hire Inspector states that the purpose of the job "is to perform inspections work in the enforcement of *City ordinances* designed to ensure Atlanta's citizens and visitors, safe, courteous and professional Vehicle for Hire Services."[12] But the same document states that one of the inspector's "Essential Duties and Responsibilities" is to "[e]nforce[ ] all city *and state codes*, ordinances, laws and regulations to ensure safe vehicle for hire operations."[13] Shepard admitted that this was his job description on the date he performed the inspection, although he testified that he was "not aware" of any such state code.

In urging that we affirm the trial court, Shepard suggests that he is cloaked with official immunity for his actions because he had no duty and no authority to enforce state law and because the manner in which he inspected tires was left to his discretion. This argument is disingenuous. The job description of a city vehicle for hire inspector states that he or she is required to enforce state codes. OCGA § 40-8-74 is a state law. It mandates minimum tread depth for passenger vehicles. Shepard, as a city vehicle for hire inspector, was required to check for minimum tread depth. Shepard was also required to complete the inspection checklist before he could pass the taxicab as safe.[14] Those tasks were simple, absolute, and definite; hence they were ministerial. Shepard is not entitled to official immunity, and he may be held liable if a jury determines that he performed his tasks negligently. The trial court erred in granting summary judgment to Shepard.

2. Heller next contends that the trial court erred in granting summary judgment to the City on his nuisance claim. Heller alleges that Shepard's practice of not properly inspecting tires was known to department supervisors and constituted a nuisance. We disagree.

"A nuisance is anything that causes hurt, inconvenience, or damage to another[;] and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance."[15] "In common

---

[12] (Emphasis supplied.)

[13] (Emphasis supplied.)

[14] The City also requires a pre-inspection by the taxicab company, and Heller alleges that Shepard had no discretion to proceed with the inspection without an inspection slip from United showing that the taxicab had passed its checklist. United's president submitted an affidavit indicating that it had performed the pre-inspection and found no problem with the tires. Adem testified that the pre-inspection was not done. We cannot resolve this disputed fact on appeal from the grant of a motion for summary judgment. Therefore, we do not consider it in our analysis.

[15] OCGA § 41-1-1.

parlance, the word nuisance is a broad term. In law it has a restricted meaning."[16] Before a municipality may be held liable for maintaining a nuisance, "there must be the *maintenance* of a dangerous condition on a *continuous* or *regular* basis over a period of time in which no action or inadequate action is taken to correct the condition after knowledge thereof."[17] This cause of action has three essential elements:

> (1) the alleged defect or degree of misfeasance must exceed mere negligence; (2) the act must be of some duration and the maintenance of the act or defect must be continuous or regularly repetitious; and (3) the municipality must have failed to act within a reasonable time after knowledge of the defect or dangerous condition.[18]

In granting summary judgment to the City, the trial court concluded that there was no evidence that the City had notice of a dangerous condition or a repetitive act that had caused injury. Heller argues that the "notice" required to maintain a nuisance action is notice of the dangerous condition, not notice of the actual harm resulting from the condition. Heller is correct that the municipality must either have knowledge "or be chargeable with notice of the dangerous condition."[19] We hold that the trial court correctly concluded, as a matter of law, that the City had no notice of a dangerous condition within the meaning of a "nuisance." Even though there is evidence in the record that inspectors did not measure tire tread depth, there is no evidence that taxicabs with insufficient tread on their tires routinely passed City inspections and thereafter were involved in collisions that caused injury.

The cases cited by Heller do not persuade us otherwise. In *City of Eatonton v. Few*,[20] plaintiff's son drowned in a swimming pool which the city was obligated to maintain and operate. The water in the pool was cloudy, the machine that was used to clean it was broken, and the pool manager testified that he contacted the employee in charge of the municipal water system at least five times about the condition. We

---

[16] *State ex rel. Boykin v. Ball Investment Co.*, 191 Ga. 382, 389 (2) (12 SE2d 574) (1940).

[17] (Citation omitted; emphasis in original.) *City of Bowman v. Gunnells*, 243 Ga. 809, 810 (1) (256 SE2d 782) (1979) (burned-out red traffic light deemed not a nuisance as a matter of law because the city acted within a reasonable time to remedy the defect after knowledge of it).

[18] (Citation omitted.) *Shuman v. Mayor &c. of Savannah*, 180 Ga. App. 427-428 (349 SE2d 239) (1986), citing *City of Bowman*, supra at 811 (2).

[19] (Citations omitted.) *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 426-427 (3) (i) (249 SE2d 224) (1978). See also *Horton v. City of Atlanta*, 159 Ga. App. 832, 834 (285 SE2d 210) (1981).

[20] 189 Ga. App. 687 (377 SE2d 504) (1988).

held that this evidence authorized the jury to find that the manner in which the pool was operated constituted a nuisance.[21] The case at bar is distinguishable because there is no evidence that anyone complained about taxicabs inspected by the City operating with slick tires.

Heller also cites *Whiddon v. O'Neal,*[22] but that case is distinguishable as well. In *Whiddon,* a child was struck by a car in an unattended crosswalk as she was leaving elementary school. The city normally supplied a crossing guard but she had been out sick for a period of time, and the city averred that the substitute guard for the day in question had been called to a city emergency. We held that a jury issue was raised as to whether the city's failure to provide a substitute crossing guard or to inform the public of the lack of a guard created a nuisance.[23] In that case, there was evidence that the city knew the crosswalk was unattended. Here, there is no evidence that the City knew that inspectors were giving a passing grade to dangerous tires — other than the ones on the taxicab that Adem was driving. The trial court did not err in granting summary judgment to the City on the nuisance claim.

3. Finally, Heller argues that the trial court erred in granting the DOT's motion to dismiss for lack of subject matter jurisdiction on the basis of sovereign immunity. Heller asserted claims against the DOT for negligent maintenance or design of the roadway where the collision occurred, asserting that the DOT had been repeatedly notified that the slope of the shoulder of the road was too great, trees were permitted to remain too close to the road, and water accumulated on the road due to inadequate drainage.

The GTCA provides a waiver of the state's sovereign immunity for torts committed by state officers and employees while acting within the scope of their official duties unless the alleged tortious act falls within one of the exceptions set forth in OCGA § 50-21-24.[24] The Code section provides that the "state shall have no liability for losses resulting from" 13 actions, including:

> (8) Inspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates

---

[21] Id. at 687-688 (1).

[22] 171 Ga. App. 636 (320 SE2d 601) (1984).

[23] Id. at 639.

[24] *Dept. of Transp. v. Brown,* 218 Ga. App. 178-179 (1) (460 SE2d 812) (1995), aff'd, 267 Ga. 6 (471 SE2d 849) (1996).

any law, regulation, code, or ordinance or contains a hazard to health or safety; [and]

(9) Licensing powers or functions, including, but not limited to, the issuance, denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization.[25]

The DOT moved to dismiss solely on the basis of these subsections, known as the inspection and permitting exceptions, arguing that it was immune from Heller's claims for negligent maintenance or design of the roadway because the death resulted, at least in part, from Shepard's negligent inspection of the taxicab and the City's failure to revoke the taxicab's operating permit. The trial court agreed. Heller contends that, regardless of the inspection or permitting exceptions, the DOT may be held liable as a joint tortfeasor for negligent design and maintenance of the roadway. We agree with Heller.

First, we examine the exceptions.

Under the [GTCA] the state waives its sovereign immunity for the torts of state officers and employees "acting within the scope of their official duties or employment." OCGA § 50-21-24 (8) operates as an exception to this waiver and must be understood in that context. Thus, the phrase "inspection powers and functions," as used in that statute, refers to those inspection powers and functions undertaken by state officials in the performance of their official duties or employment. Such action comes within the scope of the exception, notwithstanding the source of the alleged duty to inspect.[26]

Similarly, the permitting exception "grants broad immunity for losses resulting from virtually any action the [s]tate DOT could take regarding," for example, authorizing a traffic light at an intersection.[27] Thus, it logically follows that the inspection and permitting exceptions apply to actions taken by state actors, and the state cannot incur liability for tortious acts committed by others.[28]

---

[25] OCGA § 50-21-24 (8), (9).

[26] (Footnotes omitted.) *Magueur v. Dept. of Transp.*, 248 Ga. App. 575, 577-578 (547 SE2d 304) (2001).

[27] *Murray v. Ga. Dept. of Transp.*, 284 Ga. App. 263, 266 (2) (644 SE2d 290) (2007).

[28] *Magueur*, supra at 578, n. 8.

But this does not end our inquiry. In granting the DOT's motion to dismiss, the court relied on *Dept. of Human Resources v. Coley*[29] and *Dept. of Human Resources v. Hutchinson.*[30] In *Coley*, a patient in a state hospital strangled another patient to death, and the plaintiff sued the Department of Human Resources, among others. The Department moved for dismissal pursuant to OCGA § 50-21-24 (7), the assault and battery exception to the waiver of sovereign immunity.[31] Relying on *Hutchinson*,[32] we reiterated that the state was immune from liability for "any and all losses resulting from the torts enumerated in OCGA § 50-21-24 (7), regardless of who committed them."[33] We also rejected the notion that the Department could be held liable for negligently hiring or supervising an employee who commits a battery, stating that

> [i]t is true that there may be more than one proximate cause of a plaintiff's loss. Regardless of the number of proximate causes, however, the plaintiff sustains only one "loss." This loss cannot be apportioned among the various proximate causes, with part of the loss attributed to one event and another part attributed to a different event.[34]

*Coley* is distinguishable, because in that case there was no independent exception to the waiver of immunity which could, in certain circumstances, serve as a basis for liability. As we noted in *Hutchinson*, in which we held that the Department was immune from liability under the assault and battery exception for the shooting of the operator of a group home by a juvenile offender who had been placed there by the Department,[35] "the government action taken, placing the juvenile in Hutchinson's home, itself produced no loss to her; it was the juvenile's independent tort, one specified in OCGA § 50-21-24 (7), that resulted in Hutchinson's injury and damages."[36]

In the case at bar, Heller's claims of negligent design and negligent maintenance can independently establish a waiver of

---

[29] 247 Ga. App. 392, 393 (1) (544 SE2d 165) (2000).

[30] 217 Ga. App. 70, 71-72 (1) (456 SE2d 642) (1995).

[31] Under this exception, the state has no liability from losses resulting from "[a]ssault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights." OCGA § 50-21-24 (7).

[32] Supra at 71-72 (1).

[33] (Punctuation and footnote omitted.) *Coley*, supra at 393 (1).

[34] Id. at 397 (2).

[35] *Hutchinson*, supra at 70-72 (1).

[36] Id. at 72 (1).

sovereign immunity.[37] OCGA § 50-21-24 (10) provides that the state shall not be liable for losses resulting from

> [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design.

There is expert testimony in the record that the DOT failed to follow generally accepted design, construction, and maintenance practices with regard to the roadway and adjacent areas, and that this deviation from the standard of care contributed to Mrs. Heller's death. Significantly, the DOT did not move for dismissal under OCGA § 50-21-24 (10). Thus, the loss may result from negligent design or maintenance of the roadway, for which a jury may determine that the DOT is liable.[38] The question is not, as in *Coley*, whether the loss resulted from a harm for which there is sovereign immunity.

Moreover, it has previously been held that the DOT may be held liable as a joint tortfeasor.[39] The GTCA provides that "the state . . . shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances."[40] In *Dept. of Transp. v. Brown*,[41] this Court determined that the statute allowed the DOT to be held liable as a joint tortfeasor for negligently failing to install a traffic light at an intersection where a mother and her two daughters were killed.[42] In the case at bar, it will be a matter for a jury to decide whether the DOT is liable under OCGA § 50-21-24 (10) for causing the death of Mrs. Heller. The trial court erred in granting the DOT's motion to dismiss on the basis of the inspection and permitting exceptions.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Phipps, J., concur.*

---

[37] See, e.g., *Steele v. Ga. Dept. of Transp.*, 271 Ga. App. 374, 381 (609 SE2d 715) (2005) (grant of DOT's motion to dismiss reversed as to claim for negligent design of slope of road shoulder due to excessive steepness; absence of a causal connection between negligent slope design and fatal accident could be asserted as a defense but was not relevant to whether DOT was immune under OCGA § 50-21-24 (10)).

[38] See *Steele*, supra.

[39] See *Dept. of Transp. v. Land*, 257 Ga. 657 (362 SE2d 372) (1987).

[40] OCGA § 50-21-23 (a).

[41] Supra.

[42] Id. at 183-184 (6).

DECIDED FEBRUARY 19, 2008 —
RECONSIDERATION DISMISSED MARCH 19, 2008 — 

*James H. Potts II*, for appellants.

*Thurbert E. Baker, Attorney General, Robert C. Edwards, Assistant Attorney General, Troutman Sanders, Sidney L. Moore III, Laura Sauriol-Broward, Schenck & Associates, Hollis C. Cobb*, for appellees.