**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0602. CITY OF ATLANTA v. MCCRARY, et al.

A14A0691. CITY OF ATLANTA v. MERSIER.

RAY, Judge.

We granted interlocutory review to the City of Atlanta (the "City") following the trial court's denial of its motion for summary judgment in two tort actions related to a deadly collision that occurred after a high-speed police chase. The City asserted sovereign immunity. However, the trial court concluded that fact questions existed as to whether the City maintained a nuisance by, inter alia, failing to enforce its own high-speed pursuit policy. The City contends that the trial court erred in determining that a nuisance theory could apply in the context of police pursuit cases and in finding that there were fact questions as to the existence of a nuisance. Finding error, we reverse.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. OCGA § 9–11–56 (c). If a movant who does not bear the burden of proof at trial notes the absence of evidence to support an essential element of the respondent's case, the respondent must then identify evidence in the record giving rise to a triable issue. We review a trial court's grant of summary judgment de novo, construing the evidence and reasonable inferences in favor of the nonmoving party.

(Footnote omitted.) *City of Atlanta v. Shavers*, 326 Ga. App. 95, 95 (756 SE2d 204) (2014).

The evidence shows that Nicholas Dimauro and his patrol partner, both officers with the Atlanta Police Department's ("APD") Auto Theft Task Force, were on patrol on the night of January 24, 2008, when they noticed a car with an improperly completed drive-out tag. Dimauro turned on his siren and lights, and followed the vehicle. Samuel Knight, the driver of the vehicle, did not stop but instead accelerated, and Dimauro gave chase.

Dimauro deposed that he soon determined that he did not have the legal basis under APD's high-speed chase policy either to have initiated or to continue the pursuit, and he terminated the chase by turning off his lights and siren and decreasing

2

his speed. He lost sight of Knight's vehicle. Knight, by contrast, stated in an affidavit that he never lost sight of the police vehicle or its flashing lights. Dimauro deposed that he continued driving and that, about a mile after terminating pursuit, he came upon the site of a two-vehicle accident. He recognized the vehicle Knight had been driving. Knight had crashed head-on into a car driven by Eric McCrary. The collision killed McCrary and Knight's passenger, Shericka Hill.

The APD policy governing high-speed pursuits that was in effect in 2008, APD Standard Operating Procedure 3050 ("SOP 3050"), provided that an officer could initiate a high-speed pursuit only if (1) the suspect in the fleeing vehicle possessed a deadly weapon; (2) the officer reasonably believed that the suspect posed an immediate threat of physical violence to the officer or others; or (3) there was probable cause to believe that the suspect had committed a crime involving actual or threatened physical harm. The APD conducted an internal investigation, but did not discipline Dimauro because it found that he had terminated the pursuit in compliance with the policy.

Lora Mersier, the administratrix of Hill's estate, and Ernestine McCrary, the administratrix of Eric McCrary's estate, sued the City and Dimauro in his official capacity. They alleged that Dimauro and the City were negligent; that Dimauro's

3

decision to initiate a high-speed chase under the circumstances violated APD's high-speed pursuit policy; and that the City had maintained a nuisance that endangered the public by failing to enforce its pursuit policy and by failing to train and supervise its officers under the pursuit policy.

The City and Dimauro moved for summary judgment. The City acknowledged that it had waived sovereign immunity up to $700,000 based on Dimauro's negligent use of a covered motor vehicle pursuant to OCGA § 36-92-2 (a) (3), but sought to limit its liability to $700,000. The trial court granted summary judgment to Dimauro, finding him immune. The trial court declined to limit the City's liability to $700,000, concluding that a fact question existed as to whether the "continuous and regularly repetitious injurious act[s] required for a nuisance are present in this case and whether the City had knowledge of said condition[s]." The City appeals the denial of summary judgment in both cases, Case Nos. A14A0602 and A14A0691. The issues presented are identical; thus, the cases are consolidated for our review.

OCGA § 41-1-1 provides that "[a] nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may be otherwise lawful shall not keep it from being a nuisance." For a municipality to be held liable for creating or maintaining a nuisance, "the defect or degree of misfeasance must

4

exceed mere negligence (as distinguished from a single act)[.]" (Footnote omitted.) *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996). Further, "there must be the *maintenance* of a dangerous condition on a *continuous* or *regular* basis over a period of time in which no action or inadequate action is taken to correct the condition after knowledge thereof." (Footnote omitted; emphasis in original.) *Heller v. City of Atlanta*, 290 Ga. App. 345, 350 (2) (659 SE2d 617) (2008), aff'd *Ga. Dept. of Transp. v. Heller*, 285 Ga. 262, 268 (3) (674 SE2d 914) (2009) (outlining three elements of nuisance cause of action: degree of misfeasance exceeds mere negligence; act is of some duration and is continuous or regularly repetitious; municipality fails to act within reasonable time after knowledge of dangerous condition). Whether a nuisance exists is generally a fact question, but "under some factual situations it can be held as a matter of law that no nuisance exists." *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (2) (256 SE2d 782) (1979).

It is undisputed that in the wake of accidents resulting from high-speed chases, in 2002, the City established a pursuit policy aimed at increasing safety for police officers and citizens. The APD's Planning and Research Accreditation Unit ("PRAU") produces annual reports that analyze APD's pursuit activity and identify trends. In November 2007, the year prior to the accident at issue in the instant case,

5

PRAU completed its Pursuit Analysis Report for 2006 data. This report indicates that although the City requires that documentation be filed after a high-speed chase, less than half of such pursuits were documented as required. Further, the report notes that less than half of the documented pursuits were justified by one of the three grounds required by the SOP 3050.

Despite the incomplete documentation, the report determined that of the 35 pursuits documented during 2006, nine involved accidents and two resulted in an injury. The report found a significant decline in the number of accidents and in the number and severity of injuries reported between 2005 and 2006. Specifically, the 2006 report stated that compared to 2005, "there does appear to be a greater rate of compliance that indicates an increased understanding of the SOP." The 2006 report further stated that there was a great reduction in accidents and injuries compared with the prior year, and indicated that if future analyses showed officers engaging in pursuits that did not comply with the SOP 3050, training would likely be required. The report also noted that the City's pursuit form, APD Form 602, was being updated to better reflect the details of a pursuit. The report concluded by acknowledging a need for improvement, but finding that the APD's "goal of reducing the risk presented by vehicle pursuits to officers and citizens is being realized."

6

The City released its 2007 pursuit analysis report in April 2008, three months after the accident at issue. The report showed that police pursuit logs, which had been incomplete for 2006, were not available in 2007, although pursuit reporting was available from other units. The report found that of the 27 pursuits reported, 13 contained information regarding an accident and 10 involved injuries. The report determined that although the percentage of accidents rose in 2007, "pursuits as a whole have been reduced." The report recommended improved reporting processes and training, including for the Auto Theft Task Force for which Dimauro worked. It also noted that multi-unit meetings and reviews recommended in the prior year's report had been scheduled and that pursuit reporting forms were being updated as previously recommended. The report also found that

> *far fewer of the reported pursuits, on their face and as reported, violated the requirements set forth in APD.SOP.3050 (4.1.2) than in any other year of analysis*. Those pursuits that were engaged against policy were done so because of crimes that do not meet the requirements spelled out in the SOP. Compared to the analysis of 2005 and 2006 pursuits there appears to be a *far greater rate of compliance*. This indicates *an increased understanding of the SOP*. There was also a reduction in the rate of accidents and injuries, especially to uninvolved third parties.

(Emphasis supplied.) Further, the report determined that the APD's "goal of combating crime while reducing the risk presented by vehicle pursuits to officers and citizens is being realized." The PRAU report for the first quarter of 2008 noted four pursuits, including, apparently, the pursuit at issue here and the resulting fatalities. It also noted a "break-down" in the reporting process as only two of the four pursuits were appropriately reported, and PRAU learned of the other two from news reports. The report noted that Dimauro's unit, the Auto Theft Task Force, had "a history of filing detailed and accurate reports for analysis" and also noted changes to the reporting process that were designed to ensure better filing and routing of completed reports. In September 2008 and May 2010, the APD amended the SOP 3050 in an attempt to address the pursuit reporting and routing problems that had been noted in prior reports, and to require better communication and pursuit data recording.

As noted above, McCrary and Mersier argued that the City maintained a nuisance by failing to enforce its pursuit policy and by failing to supervise and train officers to follow that policy in violation of OCGA § 36-33-1 (outlining when there may be a waiver of sovereign immunity for municipal corporations).

Even assuming, without deciding, that nuisance law could apply in this context, the trial court nonetheless erred in determining that a fact question existed.

8

> To be liable for nuisance, a municipality must be charged with
> performing a continuous or regularly repetitious act or condition which
> causes injury, and it must have knowledge or be charged with notice of
> the dangerous condition or repetitive acts causing injury. A one-time
> occurrence does not amount to a nuisance.

(Citations omitted.) *Banks v. Mayor & City of Savannah*, 210 Ga. App. 62, 62 (1) (435 SE2d 68) (1993). Thus, in addition to notice of the repetitive or continuous dangerous condition and failure to rectify it in violation of a duty to act, the dangerous condition must "cause[] the hurt, inconvenience or injury[.]" (Citation and punctuation omitted.) *Mayor & C. of Savannah v. Palmerio*, 242 Ga. 419, 426-427 (3) (i) (249 SE2d 224) (1978).

In moving for summary judgment, the City pierced the pleadings of McCrary and Mersier by pointing to an absence of evidence linking the City's alleged failure to enforce its pursuit policy and train its officers to unauthorized pursuits resulting in a continuing and repeated dangerous condition or injuries of which the City had notice. The burden then shifted to McCrary and Mersier to point to evidence in the record showing that link. See *City of Atlanta v. Shavers*, supra.

Contrary to the dissent's claims, even viewing the evidence in the light most favorable to the non-moving parties, McCrary and Mersier still have failed to show

9

any evidentiary link. McCrary and Mersier provided no evidence that any lack of training or enforcement resulted in unauthorized pursuits, nor did they show that dangerous conditions or injuries resulted from unauthorized pursuits or lack of training or enforcement. See generally *Doe I v. Young Women's Christian Assn. of Greater Atlanta, Inc*, 321 Ga. App. 403, 408 (2) (740 SE2d 453) (2013) (must show causal link between alleged lack of training and injury). McCrary and Mersier have provided no evidence whatsoever linking any of the documented injuries or accidents to unauthorized pursuits, and the statistics they cite fail to show such a link. See *Banks*, supra at 62 (1) (finding that the mere existence of other collisions involving police cars, despite any danger inherent in officers' pursuit of their duties, was insufficient to show the maintenance of a nuisance).

The dissent would have us create the required linkage by entering into multiple layers of inference in order to make the plaintiffs' case. This we may not do. Here, once the City pierced their pleadings, McCrary and Mersier had to

> introduce evidence which affords a reasonable basis for the conclusion that it is *more likely than not that the conduct of the defendant was a cause in fact of the result.* A mere possibility of such causation is not enough; and *when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.*

10

(Footnote omitted; emphasis supplied.) *Alexander v. Hulsey Environmental Svcs., Inc.*, 306 Ga. App. 459, 462 (3) (703 SE2d 435) (2010). See, e. g., *McManus v. Taylor*, 326 Ga. App. 477, __ (4) (756 SE2d 709, 714 (4)) (2014) (in negligent entrustment action, evidence of defendant's prior use of borrowed vehicles with permission was insufficient to withstand summary judgment and to create inference that defendant had used vehicle with permission on day in question).

In essence, the dissent's suggestion that we are permitted to infer multiple links where no evidence supports them means that the jury also may make such assumptions. It should go without saying that the burden of proof exists for a reason. See *Miller v. Gerber Products Co.*, 207 Ga. 385, 388 (62 SE2d 174) (1950) ("The jury cannot assume the ultimate fact merely from other facts which are based upon an inference rather than upon proof"). It is well settled that "[a] shadowy semblance of an issue is not enough to defeat the motion for summary judgment." (Punctuation and footnote omitted.) *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 700 (730 SE2d 164) (2012).

That said, we do not condone APD's incomplete reporting of pursuit data. However, the PRAU reports and other evidence to which McCrary and Mersier cite do not show that the City had notice of any repeated or continuous dangerous act

11

resulting in injuries and caused by the APD's failure to enforce its pursuit policy or to train or supervise its officers in that policy. The PRAU reports do not state whether the accidents or injuries recorded resulted from pursuits that complied with SOP 3050 or from pursuits that did not comply with SOP 3050. Further, the reports show that the City had notice of a *decrease* in the overall number of pursuit-related accidents and injuries from 2005 to 2006, a *decrease* in the number of pursuits from 2006 to 2007, and a "*far greater rate of compliance . . .* [which] indicates an increased understanding of the SOP" as well as a reduction in the rate of accidents and injuries to "uninvolved third parties." (Emphasis supplied.) Given these circumstances, we cannot say that the City was chargeable with notice of a dangerous condition within the meaning of a "nuisance;" that is, the repeated or continuous condition of failure to enforce, supervise, and train related to pursuit policy that caused injury.

In an analogous case, we determined that the City of Atlanta had no notice of a dangerous condition despite evidence that taxicab inspectors failed to measure tire tread depth where there was no evidence that taxicabs with insufficient tire tread routinely passed inspections and were later involved in collisions that caused injury. *Heller*, supra at 350 (2). See also *Shuman v. Mayor & Aldermen of Savannah*, 180 Ga. App. 427, 427 (349 SE2d 239) (1986) (no nuisance from obscured stop sign at

12

intersection where 18 other collisions had occurred where city lacked records of complaints or accidents attributed to the obscured stop sign). Particularly given that the evidence shows that there were approximately 100,000 traffic stops in each of the years at issue in the PRAU reports documenting 9 accidents and 2 injuries for 2006, and 13 accidents and 10 injuries for 2007, there is no evidence that any failure to train officers in the pursuit policy, or any failure to enforce the pursuit policy, potentially endangered everyone who was near those pursuits or that the City thus had notice or constructive knowledge of such a connection between a dangerous condition and failure to train officers in the pursuit policy or failure to enforce the pursuit policy.

> Vehicle collisions are not uncommon occurrences, and the operation of police engaged in pursuit of their duties inherently involves some danger; to constitute a nuisance, such acts must constitute the continuous or regularly repetitious acts or conditions which *could work damage to anyone who came in proximity to police cars* in [Atlanta].

(Citation omitted; emphasis supplied.) *Banks*, supra at 62 (1). Further,

> [E]vidence that other collisions have occurred involving city police cars is not evidence of improper training of police officers, and does not create an inference that officers are improperly trained. Even the continuity and repetition necessary for a finding of nuisance does not prove nuisance as a matter of law, for nuisance is not shown by the occurrence of any number of collisions. Nuisance can be shown only by

13

acts of [the City], that is, *evidence of their specific failure or specific negligence* in training which *resulted in the collisions*. [McCrary and Mersier have] not shown this.

(Emphasis supplied.) Id.

The trial court in the instant case erred in denying the City's motion for summary judgment.

*Judgment reversed. Andrews, P. J., Barnes, P. J., Doyle, P. J., Boggs and Branch, JJ. concur.   McFadden, J., dissents.*

A14A0602.  CITY OF ATLANTA v. MCCRARY, et al.
A14A0691.  CITY OF ATLANTA v. MERSIER.


McFADDEN, Judge, dissenting.

I respectfully dissent because I believe the plaintiffs have pointed to evidence from which a factfinder reasonably could infer the elements of nuisance. The plaintiffs' case depends on two inferences, but both are reasonable – more reasonable than the contrary inferences that the majority would adopt. First, the plaintiffs would infer from the evidence of a high incidence of improper high speed pursuits in violation of the City's high speed pursuit policy and from the evidence of the City's failure to enforce or train on that policy that proper training and enforcement would have resulted in fewer improper high speed pursuits. Second, the plaintiffs would infer from the evidence that high speed pursuits often end in accidents that a reduction in the number of improper high speed pursuits would have resulted in fewer accidents.

"To be held liable for maintenance of a nuisance, [a] municipality must be chargeable with performing a continuous or regularly repetitive act, or creating a continuous or regularly repetitive condition, which causes . . . hurt, inconvenience

or injury." *City of Bowman v. Gunnells*, 243 Ga. 809, 810 (1) (1979) (citation and punctuation omitted). The dangerous condition must be maintained "on a continuous or regular basis over a period of time in which no action or inadequate action is taken to correct the condition after knowledge thereof." Id. See generally *Georgia Dept. of Transp. v. Heller*, 285 Ga. 262, 268 (3) (674 SE2d 914) (2009) (discussing required elements for showing nuisance in case in which plaintiffs alleged that city allowed inspector to perform inadequate inspections of taxicabs).

At the summary judgment stage of the proceedings, we must "view the evidence in the record and make all reasonable inferences from it in the light most favorable to the non-moving party[.]" *Mtg. Alliance Corp. v. Pickens County*, 294 Ga. 212, 213 (1) (751 SE2d 51) (2013) (citations omitted). Viewed in this light, the evidence shows that the City was on notice that police officers engaged in a number of high speed pursuits, that some of those pursuits resulted in accidents, and that many if not most of those pursuits were improper under the City's pursuit policy and consequently should not have occurred. The evidence also shows that the City failed to act in any meaningful respect to train the officers as to when to engage in a high speed pursuit under the policy or to enforce the policy's requirements. And the

2

evidence shows that the deaths in these cases occurred in an accident that resulted from an improper pursuit.

While the evidence does not directly link either the high incidence of improper pursuits to the City's failure to train on or enforce the pursuit policy, or the accidents that occurred during high speed pursuits to pursuits that were improper under the policy, the evidence supports these inferences. Viewed in favor of the plaintiffs, the evidence shows that high speed police pursuits – whether proper or improper under the policy – are dangerous and have proven so in the City. A significant percentage of the high speed pursuits in which the Atlanta Police Department engages end in accidents. Notwithstanding that known danger, the City has made a determination that, in certain cases, high speed pursuits, on balance, are beneficial to public safety and therefore proper. That determination is entitled to the protection of sovereign immunity, and the City cannot be held liable on a theory of nuisance for accidents arising from high speed pursuits that comply with the policy. See *Banks v. Mayor &c. of Savannah*, 210 Ga. App. 62 (1) (435 SE2d 68) (1993) (acknowledging that operation of police engaged in duties inherently involves some danger); see also *Georgia Dept. of Transp.*, 285 Ga. at 268 (3) (claim of nuisance against municipality

3

requires showing that municipality engaged in degree of misfeasance that exceeded mere negligence).

But the evidence, when so viewed, also shows that the City neither informed the officers of when they could engage in high speed pursuits under the policy nor held their officers accountable for complying with the policy. It is reasonable to infer that these failures by the City resulted in additional, improper high speed chases and that improper high speed chases are no less dangerous than proper ones. It is therefore reasonable to infer that some of the accidents resulting from high speed chases arose from improper high speed chases, chases that, under the policy, should not have occurred. These inferences raise more than a mere possibility of the necessary causal link between the City's training and enforcement of its policy and accidents in improper high speed pursuits. To find otherwise would require us to construe the evidence in favor of the summary judgment movant; it would require us to infer that training on and enforcement of the high speed pursuit policy would not have led to more compliance therewith, and to infer that accidents were materially less likely to incur in improper high speed pursuits than in high speed pursuits generally.

4

Nuisance cases cited by the majority do not compel a different conclusion. In *Heller v. City of Atlanta*, 290 Ga. App. 345, 350 (2) (659 SE2d 617) (2008), there was no evidence that the municipality knew of the dangerous condition – that a taxicab inspector was giving passing grades to vehicles with dangerous tires. Here, in contrast, there was evidence that the City knew that many if not most reported high speed pursuits should not have occurred under the policy, and that many other high speed pursuits were going unreported. In *Banks v. Mayor &c. of Savannah*, supra, 210 Ga. App. at 62 (1), the plaintiff presented no evidence that police officers had been improperly trained in the operation of their police cars. Here, in contrast, there was evidence of a complete lack of training in or enforcement of the policy governing high speed pursuits. Finally, in *Shuman v. Mayor &c. of Savannah*, 180 Ga. App. 427, 428 (349 SE2d 239) (1986), we upheld summary judgment against a plaintiff who had not presented evidence that any of the accidents at an intersection could be attributed to the dangerous condition of an obstructed stop sign. Here, in contrast, the plaintiffs have pointed to some evidence from which it could be reasonably inferred that some accidents could be attributed to the dangerous condition of unnecessary and unwarranted high speed pursuits.

5

Because the plaintiffs have pointed to some evidence to support their nuisance claim, the trial court properly denied the City's motion for summary judgment, and that ruling should be affirmed.